### Alamo Dressed Beef Company v. Benjamin F. Yeargan.

Decided December 1, 1909.

**1.—Damages—Release—Plea in Avoidance.**

A defense that a claim for damages had been settled and a release therefor executed prior to filing suit thereon, is a plea in avoidance and must be specially pleaded.

**2.—Practice—Repetition of Charges.**

It is proper to refuse a requested charge when the issue thereby presented is embodied in the main charge of the court. When several charges presenting substantially the same issue are requested, the giving of one is sufficient reason for refusing the others.

**3.—Same—Invited Error.**

The issue being whether or not plaintiff had sufficient mental capacity to understand the nature and effect of a release executed by him, and there being in the record special charges requested by the defendant submitting said issue to the jury and also requesting a peremptory instruction for defendant on said issue, it will be presumed, in the absence of anything in the record showing that the peremptory instruction was asked first and refused by the court, that the defendant invited or participated in the error, if error at all, in submitting said issue to the jury.

**4.—Master and Servant—Machinery—Duty of Inspection.**

The duty of reasonable inspection by the master of appliances furnished for use by the servant, is imposed upon the master by law at all times, and the mere fact that the appliance is of an approved pattern and was bought from a reputable dealer will not relieve the master of that duty.

**5.—Same—Defective Machinery—Assumed Risk.**

When a defect in machinery was not open and obvious, but could and should have been discovered by ordinary care in inspection, the danger arising therefrom can not be said, as matter of law, to be one which the servant assumed, although he may have been an experienced operator and familiar with the appliance.

**6.—Same—Patent Defect.**

A defect in machinery which ordinary care in inspection would disclose can not be said to be a latent defect.

**7.—Charge—Assignment of Error—Insufficiency.**

An assignment of error, submitted as a proposition, that the charge of the court was upon the weight of the evidence, but which does not indicate in what respect the charge is subject to the criticism, will not be considered.

**8.—Motion for New Trial—Newly Discovered Evidence.**

A motion for new trial upon the ground of newly discovered evidence considered, and held properly overruled because it appeared from the record that defendant had been put upon notice of the existence of the evidence and failed to use due diligence to procure the same.

Appeal from the District Court of Bexar County. Tried below before Hon. J. L. Camp.

*Keller & Keller* and *Newton & Ward,* for appellant.—The fact that the appliance being of an approved pattern, and having been bought from a reputable dealer, relieved the defendant of the duty of inspection in the absence of some circumstance which would put a prudent man upon inquiry at the time of purchase or afterwards. Carlson v. Phoenix B. Co., 8 N. Y. Supp., 634, affirmed in 30 N. E., 750; Shea v. Wellington, 163 Mass., 364, 40 N. E., 173; Reynolds v. Merchants' Woolen Co., 168 Mass., 501, 47 N. E., 406; Powers v. New York Central & H. R. Co., 14 N. Y. Supp., 408, affirmed in 29 N. E., 148; Doyle v. White, 41 N. Y. Supp., 628; Stourbridge v. Brooklyn C. R. Co., 41 N. Y. Supp., 128; Clyde v. Richmond & D. R. Co., 65 Fed., 482; Richmond & D. R. Co. v. Elliott, 149 U. S., 266, 37 L. ed., 728; Roughan v. Boston & L. Block Co., 161 Mass., 24, 36 N. E., 461.

A servant is not in the exercise of ordinary care unless, at each stage in the progress of his work he makes an effective use of his bodily and mental faculties, and observes as attentively as is reasonably possible under the circumstances the condition of his surroundings and instrumentalities by which his safety may be effected and the result of their operation by himself or others, in so far as that operation may tend to subject him to danger. 1 Labatt, Master and Servant, sec. 332; Jones v. Sutherland, 65 N. W., 496; Borden v. Daisy Roller Mill Co., 74 N. W., 92.

The servant assumes the risk of injury, not only from the perils ordinarily incident to his services, but also from special hazards existing because of the particular means or methods used by the master in the conduct of his business, of which the servant is informed. Burnham v. Concord & M. R. R. Co. (N. H.), 44 Atl., 750; Hayden v. Smithville Mfg. Co., 29 Conn., 548; Rush v. Missouri Pac. R. Co. (Kan.), 12 Pac., 582; Simmons v. Chicago & T. R. Co., 110 Ill., 340; Richards v. Rough (Mich.), 18 N. W., 785.

The servant as a matter of law is charged with knowledge of all patent and obvious defects in any appliance or place of work which are known to him, or must necessarily have become known to him in the course of his duties, or might have been discovered by the use of ordinary care. Gulf, C. & S. F. Ry. Co. v. Gray, 25 Texas Civ. App., 99; Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72; Gulf, C. & S. F. Ry. Co. v. Johnson, 83 Texas, 633; Rogers v. Galveston City Ry. Co., 76 Texas, 502; Texas Central Ry. Co. v. Lyons, 34 S. W., 364; Texas & P. Ry. Co. v. Bradford, 66 Texas, 732; St. Louis, A. & T. Ry. Co. v. Lemon, 83 Texas, 143; Missouri, K. & T. Ry. Co. v. Thompson, 11 Texas Civ. App., 658; Houston & T. C. Ry. Co. v. Fowler, 56 Texas, 457; Gulf, C. & S. F. Ry. Co. v. Harriett, 80 Texas, 83; Green v. Sansom, 25 So., 335; Hall v. United States Canning Co., 78 N. Y. Supp., 619; Dillengberger v. Weingartner, 45 Atl., 640; Corcoran v. Milwaukee Gas Co., 51 N. W., 329.

Equal knowledge and opportunity of the servant with the master absolves the master from liability of any defects. Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 72; Texas & P. Ry. Co. v. French, 86 Texas, 96; Texas Central Ry. Co. v. Lyons, 34 S. W., 364; Cahill v. Hilton, 13 N. E., 339; Meador v. Lake Shore & M. Ry. Co., 37 N. E., 722; Goltz v. Milwaukee, L. S. & W. Ry. Co., 44 N. W., 754; Dillen-

berger v. Weingartner, 45 Atl., 638; Jenney Elec. L. & P. Co. v. Murphy, 18 N. E., 30; Stewart v. Seaboard Air Line Ry. Co., 41 S. E., 981; Marsh v. Chickering, 5 N. E., 57; Ehni v. National Tube Works, 52 Atl., 166.

Where the injury is the result of mutual and concurring negligence of plaintiff and defendant, the plaintiff can not recover damages. I Thompson on Negligence, sec. 176, p. 174.

The master may construct and equip his plant as he sees fit, without liability to an employe, who, with knowledge or with adequate means of knowledge, chooses to take the risk thereof. Relyea v. Tomahawk P. & P. Co., 85 N. W., 960.

The master is not charged with the duty of inspecting simple and well-known appliances, such as involve no intricate or difficult mechanical principles. Missouri, K. & T. Ry. Co. v. Thompson, 11 Texas Civ. App., 658; Hall v. United States Canning Co., 78 N. Y. Supp., 619; Marsh v. Chickering, 5 N. E., 57; Wyman v. Clark, 62 N. E., 247; Ehni v. National Tube Works, 52 Atl., 166; Jenney Elec. L. & P. Co. v. Murphy, 18 N. E., 30.

Where the consideration of a release is retained and used and there is evidence that plaintiff was able to understand the settlement after it was made and expressed his satisfaction with same, it is error to refuse to submit to the jury the question of the ratification of the release. Missouri Pac. Ry. Co. v. Brazzil, 72 Texas, 238, 239; Missouri, K. & T. Ry. Co. v. Brantley, 26 Texas Civ. App., 11; Gibson v. Western N. Y. & P. R. Co., 30 Atl., 308; Pawnee Coal Co. v. Royce, 56 N. E., 624; Jones v. Alabama & V. Ry. Co., 16 So., 382; Chicago, St. P. & K. C. Ry. Co. v. Pierce, 64 Fed., 294; Laird v. Union Traction Co., 57 Atl., 987; Allis v. Billings, 6 Metc. (Mass.), 417; 6 Thompson on Neg., secs. 7372 and 7382; Wolcott v. Connecticut Gen. L. Ins. Co. (Mich.), 100 N. W., 572-3; Morris v. Great Northern Ry. Co. (Minn.), 69 N. W., 628.

When the master adopts an implement which is in general use by persons of ordinary care and prudence in the same business, and such person is not in any other respects guilty of negligence contributing to the injury of the employe, then such person, in the selection of such implement, has exercised all the diligence the law requires of him. The above requested charge which was refused by the court was made pertinent by the evidence, announced a correct doctrine of law, and the court erred in refusing to give it to the jury. 1 Labatt's Master and Servant, secs. 43, 44, and the numerous authorities cited in the notes; International & G. N. Ry. Co. v. Bell, 75 Texas, 51.

*H. C. Carter, Perry J. Lewis,* for appellee.

JAMES, CHIEF JUSTICE.—The action is brought for Benjamin F. Yeargan, a person *non compos mentis,* by his wife, his guardian, for damages for personal injury alleged to have been received on November 29, 1905, by him as resulting from the explosion of a valve, a part of the machinery about which he was working in the discharge of his duties as employe of defendant (the appellant), which valve and the machinery and pipes adjacent thereto defendant had negligently

permitted to become old, worn and defective, so that the same had become unfit for use, and that defendant was negligent in having failed to properly inspect said machinery. The petition alleged that said valve, in addition to being old, worn and defective, was not constructed of the proper material to make it sufficiently strong, and was not a proper valve for the use to which it was put, and was therefore too weak to bear the strain put upon it in the proper use thereof, etc., all of which negligence caused or contributed to the explosion by reason of which the said Yeargan was severely scalded upon his face, head, body and limbs; that his skull was crushed and he was bruised and mutilated upon his head, face, body and limbs, and sustained severe internal injuries; that by reason of his said injuries he has become deranged to such an extent as to necessitate his conviction and confinement as a person *non compos mentis;* all of which injuries are permanent and have caused him to suffer great mental and physical pain, and he will be thus afflicted for the balance of his life. That prior to this event be was a strong, healthy and industrious man earning about $100 per month, which he had a reasonable expectation of increasing, and that he has been damaged in the sum of $30,000, for which judgment is asked.

Defendant answered by a general denial, pleas of contributory negligence and assumed risk; that the valve was purchased from a reputable dealer, was of standard make and such as was generally used in manufacturing plants and by experts engaged in such business, and that if plaintiff ever had any cause of action against defendant it was settled, compromised and adjusted with plaintiff on December 19, 1905, whereby plaintiff was estopped and barred from maintaining this action.

Plaintiff filed a supplemental petition wherein, besides a general denial, it was pleaded that by reason of his injuries the mind of Yeargan became unbalanced, and at the time of the alleged settlement he was in such a mental state as to be wholly incapable of making a valid contract, and unable to understand any contract of settlement which he might have made, and for this reason any settlement should be held void; that the amount paid on the alleged settlement was $67.75, which amount plaintiff tendered with legal interest, and prays that the said settlement be held for naught.

There was a verdict for plaintiff in the sum of $18,962.88.

The eleventh and twelfth assignments of error will be considered first. They complain of two refused charges, the object of which was to have the jury instructed upon the theory that if Yeargan afterwards became conscious and informed of the release, and did not in a reasonable time afterwards repudiate or disaffirm the release executed by him, that he could not recover. The proposition, to wit: "Where the consideration of a release is retained and used, and there is evidence that plaintiff was able to understand the settlement after it was made, and expressed his satisfaction with the same, it is error to refuse to submit to the jury the question of the ratification of the release," is strenuously briefed by appellant. There is an insurmountable reason why this issue could not correctly have been submitted, and this is that defendant had no pleading to support it. We regard the reason-

ing of the Supreme Court in Moody & Co. v. Rowland, 100 Texas, 370 and 371, as intended to declare and settle in this State the necessity for such matter of avoidance to be pleaded in order to make it an issue. The very question as it arises here was decided in Elston v. Jasper, 45 Texas, 409.

While on the matter of refused charges we shall, for convenience, consider all of them in this connection.

The tenth complains of the refusal of the following instruction: "Now comes the defendant, and requests the court to instruct the jury as follows: That if the plaintiff had a reasonable perception or understanding of the nature and terms of the release which he signed, that he is bound by it, as mere weakness of mind or unsoundness thereof to some degree is not sufficient to set aside an executed contract." Appellant's only proposition is that the legal test of a sufficient mental capacity is, if a person understands the nature of the business in which he is engaged and the effect of what he is doing, his acts are valid, and this is true though the mind of such person may be impaired by age or disease. This proposition the trial court concurred in fully, as it gave a charge asked by defendant as follows: "If the plaintiff understood the nature of the document that he was signing and the effect of what he was doing, his act is valid, and this is true though his mind might have been impaired by accident, disease or otherwise." The refused charge was obscure in its terms by the use of the words "to some degree," and was apt to mislead. Another rule which appellee claims to apply in this connection is that the refused instruction was one of four charges requested presenting by defendant the same defensive issue, and it was sufficient compliance for the court to give one of them. (Houston & T. C. Ry. v. Harris, 120 S. W., 503, and cases cited; Schow & Bro. v. McClosky, 102 Texas, 129.) We think, however, the other reasons are sufficient, and particularly we think that, tested by appellant's proposition, the criticism is futile, as the court gave a charge corresponding to the proposition.

The thirteenth complains of the refusal of this charge: "That if you believe from the evidence that plaintiff had worked for defendant before and was familiar with the conditions under which his duties were to be performed, and chose to accept employment or to continue in it, he assumed such risks and dangers as were incident thereto." The proposition is correct. There can be no question that plaintiff, under the evidence, had assumed all risks that were ordinarily incident to his work. Two special charges on this subject requested by defendant were given, which fully covered the subject.

The fifteenth involves the refusal of this charge: "The master is not an insurer of the safety of the tools and implements furnished the servant in its employ; the master is only under the legal duty of exercising ordinary care to furnish the servant such tools and implements which are reasonably safe. Where the tools and implements furnished the servant have been purchased of reputable manufacturers engaged in the manufacture of such tools and implements, and the same are such as are generally used by persons of ordinary care engaged in such business, then the master is not guilty of negligence in furnishing such tools and implements to his servants, even though the

same should not turn out to be absolutely safe. If you believe from the evidence that the valve which it is claimed exploded and injured the plaintiff was purchased by defendant from reliable dealers in and manufacturers of such valves, and that the same was such as was commonly used by persons of ordinary care and prudence engaged in operating plants similar to that of defendant, then defendant would not be guilty of negligence in furnishing said valve to plaintiff to be used by him, and in such case you will return a verdict in favor of defendant, unless you should find in favor of plaintiff on some other issue submitted to you in my charge."

This charge does not submit the question of negligence to the jury, and it is capable of being understood and construed as eliminating the duty of inspection. We find that another instruction was asked by defendant and given on the same issue which adequately and correctly submitted it.

The fourteenth complains of the refusal of a peremptory instruction for defendant. The charge requested was in general terms, and the proposition which defendant briefs it on is that the undisputed evidence shows that Yeargan, at the time of executing the release, was possessed of sufficient mental capacity to understand the nature, character and effect of the same. The first assignment of error deals with the same proposition, and in addition the proposition that the verdict was, in this respect, against the great preponderance of the evidence. The peremptory charge asked did not specify and show that in asking it defendant did so upon this theory. There were other theories, so far as the trial court knew, which might have been in the mind of defendant's counsel in making the request; as, for instance, that there was no sufficient proof of negligence on the part of defendant, or that plaintiff had assumed the risk. Defendant asked charges submitting the issue of mental capacity of plaintiff at the time of the release, and there is nothing to show that defendant pursued this course after first insisting on the court giving a peremptory instruction because of the failure of the evidence to show want of mental capacity, and having it refused. The opinion in the case of Receivers Kirby Lumber Co. v. Poindexter, 101 Texas, 322, fits these conditions, and would hold that defendant participated in the error, if error it was, of submitting the issue, and can not now assign error in that respect.

We have, however, considered all the testimony bearing on the issue, and are of opinion that it is very far from presenting a case where there is no evidence to support a finding therein in favor of plaintiff, or a case where such finding is against the great weight of the evidence. We forbear detailing and discussing the testimony on this subject because of its voluminous character, which would demand an opinion of undue length, and still not admit of a presentation of it all. Therefore, as a conclusion of fact, we find as above stated.

The second assignment is that the undisputed evidence, or at least the overwhelming weight and preponderance thereof, shows that defendant was guilty of no negligence in respect to the valve, on account of the explosion of which this action is brought. The sole proposition advanced is that "the fact that the appliance being of an approved pat-

tern, and having been bought from a reputable dealer, relieved the defendant of the duty of inspection in the absence of some circumstance which would put a prudent man upon inquiry at the time of the purchase or afterwards." To this we are, of course, confined. The proposition is unsound upon its face, for it amounts to this: that the duty of inspection does not arise until something happens in the use of the appliance which directs attention to its imperfection, when reasonable inspection is imposed by law at all times. We have carefully considered the evidence on this subject also, and find as a conclusion therefrom, in deference to the verdict, that ordinary care, in reference to the duty of inspection, was not performed.

The third assignment maintains that the undisputed evidence, or if not, then the overwhelming weight of the evidence, shows that the explosion of the valve, and the accident and injury to plaintiff, were occasioned by his contributory negligence. The point upon the evidence sought to be made is succinctly developed in the "Remarks" under this assignment, which we copy:

"From the evidence adduced in this case it seems to us that it is perfectly apparent that Benjamin F. Yeargan was injured by reason of his own negligence. He was an experienced fireman when he began to work for defendant, and had worked nearly a year there as fireman before he was hurt. He was instructed to drain off the water and to open the equalizer a sufficient length of time for the water to drain off and the pressure to become the same in both boilers, before he cracked or opened the steam valve. He had properly performed these duties before that time and knew how to do them and the danger of a water-hammer when the valve was opened suddenly. The undisputed evidence given by the witnesses, and all the facts surrounding the case, show that he opened the steam valve suddenly, allowing too much steam in, which produced a water-hammer that blew out the valve and injured said Yeargan. There is no evidence upon which to base the cause of the accident other than to the water-hammer, and the water-hammer was the result of carelessness in opening the valve by Yeargan, and not due to any negligence of defendant. That said Yeargan was guilty of negligence in the premises can not be doubted by any impartial or unbiased person after a careful examination of the evidence in this case."

The same conditions exist in connection with this assignment as with the first assignment in respect to defendant's asking charges submitting to the jury the question of contributory negligence. Kirby Lumber Co. v. Poindexter, *supra.*

No one was present and saw the accident. What Yeargan did in the operation of the machinery from which the explosion occurred was ascertainable only from the circumstances and from the opinions of experts. The expert testimony of some of the witnesses was sufficient to dispel the theory that Yeargan had handled the machinery negligently or improperly. Witnesses testified, in view of the surrounding conditions in evidence, that no water-hammer was produced or could have been produced on that occasion.

The fourth assignment is that the undisputed evidence or the great weight thereof shows, under the same facts set forth under the third

assignment, that plaintiff assumed all the risks and dangers of the performance of his duties at the time he was injured, and by reason of said facts his injuries were caused by one of the risks usually incident to his employment, he being fully aware of the danger of explosion of valves under such circumstances, and therefore the verdict is without any evidence to sustain it. It certainly can not be maintained as a matter of law that Yeargan knew the defect which the testimony showed to exist in this part of the machinery. There was evidence that the defect was not open and obvious, but could and should have been discovered by ordinary care in inspection. This duty rested on defendant, not on plaintiff. Under these circumstances the danger therefrom was not as a matter of law one which plaintiff asumed, although he may have been an experienced operator and had worked for a long time with the appliance. Besides, in the remarks in the brief under this assignment, the real contention seems to be that the undisputed evidence shows that a water-hammer was produced by the careless manner in which he performed his duty; that the water-hammer caused the explosion; that he fully understood how a water-hammer was produced and the danger thereof, and had for a year or so been doing daily the work his duty called him to perform. The fact, as we have already shown, that the jury could legitimately under the evidence have gone so far as to find that no water-hammer was produced at all, seems to us to effectually dispose of the assignment.

The fifth is that the undisputed evidence shows that the explosion was due to hidden defects in the valve not discoverable by ordinary care, because, if any, they were inside of the metal and not apparent from the outside, and were in the original manufacture, and not ascertainable in the exercise of ordinary care by competent, prudent and skillful persons engaged in manufacturing or in inspecting the same. We find, as a conclusion of fact deducible from testimony, that the valve bore external evidences of imperfections tending to make it liable to explode, which the performance of the duty of inspection by ordinarily careful inspection would have ascertained. A defect which ordinary care in the course of reasonable inspection would disclose, is not what is meant by a latent defect. That that valve had been in use for over a year was a part of the evidence. Defendant showed no attempt at inspection. One of defendant's witnesses testified that these objects should, in his judgment, be inspected about every six months, and the witness was speaking of internal inspection. As to other inspection, he stated it should take place from time to time.

The question of excessive verdict is presented by the sixth. We find it not such, on the facts, as warrants our interposing.

The clause of the court's charge brought into question by the seventh assignment did not give undue prominence to plaintiff's side of the issue of mental deficiency, so that it was calculated to mislead the jury.

The eighth and ninth are as follows: Eighth. "The court erred in that part of its charge wherein was submitted the issue as to the mental capacity of plaintiff, to execute the release relied on by defendant, in that said charge commented upon the weight of the evidence and was an invasion of the province of the jury."

Ninth. "The court erred in that part of its charge complained of in the preceding assignment of error, because the same was misleading and confusing to the jury, in that the jury could infer from the same that the court was of the opinion that defendant's defense that plaintiff comprehended the nature and contents of the release when he signed the same, was not established by the evidence."

The first of these is presented for our consideration as a proposition in itself, but it does not indicate in what respect the charge is claimed to be on the weight of evidence. The second is more definite. The clause complained of is identified as the one referred to by the seventh assignment, but it is clearly not subject to the criticism.

The sixteenth and seventeenth assignments complain of the refusal of a new trial for newly-discovered evidence. The basis of this part of the motion is the testimony given by Dr. Barker at the trial, as follows: "He is suffering at this time with advanced dementia of a paretic form and his reasoning faculties are gone practically." The newly-discovered testimony consists of opinions of Dr. Graves and Dr. Moody, the latter having been a leading witness for defendant on the trial. According to their affidavits, referred to in the motion, the former states his opinion concerning general paresis or paretic dementia to be as follows: "From my experience this disease is always due to syphilis. I have never seen a case of this disease in which I considered traumatism had any causative influence, and I do not believe that traumatism is ever the cause of paresis or paretic dementia." The latter states his opinion as to whether traumatism may cause paretic dementia, that "I have never seen a case of that disease which was caused by any kind of traumatism, and I do not believe it is ever so caused; it is my opinion that in every case of paretic dementia there must be a syphilitic basis, together with a neuropathic constitution. When incipient paretic dementia has already developed there is a possibility of the severity of the symptoms being increased by traumatism through its effects of lowering the general vitality and nutrition of the patient." The other affidavit was of the general manager of defendant company certifying to Dr. Moody's standing and experience as an alienist.

The motion states that at the time of the trial none of defendant's officers, servants or attorneys were informed of the causes of such form of dementia, nor did they know that the same, in the opinion of the most skillful and scientific experts on insanity was never due to traumatism, but due to syphilis—that they learned this after the trial.

Dr. Barker testified as aforesaid, and he and other professional men gave it as their opinion that the infirmity which Yeargan exhibited was ascribable to the blow in question, which was distinct that traumatism was the cause of the form of paretic dementia which he suffered. These witnesses were giving their opinions based on their knowledge and experience. What was the cause of plaintiff's infirmity was a vital question. Under such circumstances, after Dr. Barker had testified as above, the failure of appellant to make some inquiry of appellant and its expert witnesses on that subject was not due diligence, and if Dr. Moody had been asked, the testimony now sought to be

used would have been discovered then. Dr. Moody was placed on the stand by defendant after Dr. Barker had so testified.

Taking the affidavit of Dr. Graves, it appears that he had reference to general paresis, using general paresis and paretic dementia as interchangeable terms. It does not seem to be different in the case of Dr. Moody's affidavit. There was no testimony that Yeargan had general paresis. Dr. Barker designated his case as "advanced dementia of a paretic form," which does not unmistakably come within the purview of these affidavits. In addition to this, a number of controverting affidavits were presented to the trial judge to the effect that traumatism is one of the recognized causes of dementia such as plaintiff is suffering from—that Yeargan's condition was due to traumatism, and there was no evidence whatever of syphilis in his condition. There was also the affidavit of Mrs. Yeargan that he had not been afflicted with syphilis.

We find a memorandum in the record signed by the trial judge which stated, "After the motion for new trial was presented and argued to the court, and after the court overruled said motion, defendant asked and was given leave to file the affidavit, and it was considered by the court as a part of defendant's motion for a new trial." This has evident reference to an affidavit by defendant's manager to the effect that Dr. Barker was not a witness in a former trial of this case, and that he was the only witness who ever defined or gave a name to the disease with which plaintiff is afflicted, and that he stated that plaintiff is suffering from an advanced dementia of paretic form.

This case, according to the controverting affidavits, was tried once before in April, 1908; that in June of same year the cause was continued, and in November it was continued on application of defendant; that at the former trial Yeargan was present and his head was examined by defendant's witnesses, who testified in the case, and that, in their opinion, plaintiff's condition was caused by traumatism.

The defendant, therefore, knew at least as early as April, 1908, that plaintiff would undertake to show by expert opinions the cause of Yeargan's condition to have been traumatism. Certainly this would suggest to any prudent mind the consultation of expert alienists on the subject, and failure to do this until after the recent trial, which did not occur until in January, 1909, was not excusable. No diligence was observed in this regard, and the excuse offered in the motion is that no amount of diligence on defendant's part could have ascertained the fact because defendant and its attorneys were in absolute ignorance concerning the matter; and that since the trial defendant's attorneys have accidentally discovered the fact, and thereupon consulted Dr. M. L. Graves. How the discovery came about by an accident the motion did not explain. It was manifestly the testimony of Dr. Barker which afforded the occasion for any inquiry by defendant on the subject, and it is fair to presume that the information received by defendant by accident after the trial came from some medical expert, as it would not do to presume that a layman would possess such knowledge. Everything goes to show the facility with which defendant could have secured such testimony at the trial, and that defendant would have had the same had the testimony of Dr. Barker been noted when it was

given and proper consideration attached to its importance and probable effect, which was evident. We think the motion was correctly overruled. The judgment is affirmed.

*Affirmed.*

Writ of error refused.