SOUTHWESTERN STATES PORTLAND CEMENT CO. v. YOUNG.†

(Court of Civil Appeals of Texas. Dallas. Oct. 14, 1911. Rehearing Denied Nov. 4, 1911.)

1. APPEAL AND ERROR (§ 1001*)—REVIEW—VERDICT—CONCLUSIVENESS.
    A verdict will not be disturbed where there is any evidence to support it.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3928; Dec. Dig. § 1001.*]

2. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—ACTIONS—EVIDENCE.
    In an action for injuries received by a servant, evidence of the master's negligence *held* to raise a question for the jury.
    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

3. MASTER AND SERVANT (§ 285*)—INJURIES TO SERVANT — ACTIONS — EVIDENCE — JURY QUESTION—PROXIMATE CAUSE.
    In an action by a servant for personal injuries, the question of whether the master's failure to supply lights was the proximate cause of the injury *held* for the jury.
    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 285.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

4. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where plaintiff, inexperienced as a' "feeder tender," was, in the discharge of his duties, required to keep cement from clogging inside of the feeder, which contained a number of rapidly revolving knives, and his hand was caught in the knives because he could not see the danger with the light furnished, he was not guilty of contributory negligence as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

5. MASTER AND SERVANT (§ 221*)—INJURIES —ASSUMPTION OF RISK.

Plaintiff, having been promised by his master sufficient light, did not assume the risk of injury from the want thereof.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 638–647; Dec. Dig. § 221.*]

6. APPEAL AND ERROR (§ 882*)—REVIEW—INVITED ERROR.

Where defendant at the same time requested a peremptory charge and special charges submitting certain issues, he cannot on appeal complain that there was no evidence authorizing the submission of such issues.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

7. PLEADING (§ 252*)—AMENDMENT—EFFECT—AMOUNT CLAIMED.

In his original petition, plaintiff alleged that he had been damaged in a certain sum, and that he had expended a named amount for hospital accommodations and medical attention. Upon the filing of defendant's plea of former suit pending, plaintiff amended his petition by withdrawing his claim for medical attention, but did not reduce his sum claimed as damages. *Held*, that the withdrawal of the claim for medical attention did not reduce the gross amount sued for.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 252.*]

8. DAMAGES (§ 158*)—ISSUES AND PROOF.

In an action for damages for injuries to plaintiff's hand, testimony that another operation would likely be necessary was relevant, even though plaintiff's petition did not specifically allege the probable necessity of such an operation.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 441–446; Dec. Dig. § 158.*]

9. APPEAL AND ERROR (§ 1052*)—REVIEW—HARMLESS ERROR.

Any error in admitting, in an action for personal injuries, evidence which could only have affected the amount of the recovery was harmless, where defendant did not claim that the verdict was excessive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. § 1052.*]

Appeal from District Court, Dallas County; R. C. Roberts, Judge.

Action by Allen G. Young against the Southwestern States Portland Cement Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Harry P. Lawther, for appellant. Carden, Starling, Carden & Hemphill, for appellee.

TALBOT, J. This is an action brought by the appellee against the appellant to recover damages for personal injuries inflicted upon

him through the negligence of appellant. Appellee was in the employment of the appellant as a "feeder tender" in its kilnroom. The machine or feeder at which he was at work was a cast-iron casing, inclosing a revolving cylinder with eight knives attached thereto, each about two feet long. About 12 or 14 inches below these knives was an opening in a spout attached to the iron casing inclosing the cylinder, and forming a part of the feeder, 10x12 inches. Above the iron casing referred to was a large hopper, into which cement or the material to be treated by the feeder was emptied. This material passed into and through the feeder and down the spout in which was the opening mentioned. Appellee's duties were to watch the material through the opening in the spout, as it passed out or through the feeder, and, in case the material (which was about as fine as flour) became clogged, to loosen and free the same by taking a stick, inserting it into the opening, and stirring it around. The cylinder was turned, it seems, by means of a ratchet wheel worked with a lever and dog, and made at the time appellee was injured about seven or eight revolutions a minute. The appellee alleged, in substance, that defendant failed to provide sufficient light at the place where he was hurt, so that its machine could be safely operated; whereupon he requested defendant and its duly authorized servants to remedy the situation, so that said work could be performed with safety; that he was by them promised and assured that his request would be complied with, and that he relied upon such assurance and believed the necessary light would be furnished him, but defendant negligently failed to provide such light within a reasonable time after the request was made therefor, and as a proximate result of defendant's negligence in this respect said feeder caught one of his hands, drew it into the same, and cut off the fingers, and so mashing and bruising the hand that amputation of a portion thereof and of all the fingers was necessary, to his damage in the sum of $2,000. Appellant answered by general demurrer, plea of a former suit pending, a general denial, assumed risk, and contributory negligence. A jury trial resulted in a verdict and judgment in favor of appellee for $2,000, and the appellant appealed.

[1, 2] The first assignment of error complains of the court's refusal to instruct the jury, at appellant's request, to return a verdict in its favor. We have reached the conclusion that, under the decisions of this state, there was no error in this action of the court. It seems to have been uniformly held by our appellate courts that they will not disturb the verdict of a jury on appeal, when the record discloses evidence to support it. This rule has been adhered to practically without variation, even in cases where the court was clearly of the opinion that the decided

---

preponderance of the evidence was against the verdict. As has frequently been said, in effect, it is only where the evidence is of such a character that reasonable minds cannot draw different conclusions from it that the trial court is authorized to take the case from the jury. Such was not, we think, the conclusive character of the evidence in the case at bar. As has been seen, the ground of negligence alleged was the failure of appellant to furnish, after request and promise to do so, sufficient light to enable appellee to see how to perform the work required of him safely; that is, without coming in contact with the revolving knives inclosed in the cast-iron casing. The testimony shows that appellee worked at night; that the nearest light to the machine at which he was at work was 35 or 40 feet away, and back of the machine; that is, the opening into the feeder through which appellee was compelled to put the stick and stir the material, to prevent it from clogging, was on the opposite side of the feeder from the light, and he worked in the shadow of the machine. The appellee testified, in effect, that he had not, before going to work for appellant, had any experience with the kind of work he was doing at the time he was injured, and had never before worked around a cement plant or machinery of any kind; that he was doing the work in which he was engaged exactly as Mr. Hudspeth, a vice principal of the appellant, directed him to do it; that he had the promise of appellant's head electrician and night electrician to put in additional lights, and believed they would comply with their promise; that if the promises to put in the additional lights had not been made him he would have quit the service of appellant when he discovered the work he was directed to do was dangerous (which was the third or fourth night after he began work), because the light furnished him was insufficient to enable him to see how far he had his hand and arm in the opening; that if he had had sufficient light he could have seen how far he had his arm in the opening; that if he had had a droplight right at the machine, with the light shining on the opening in the feeder, he would have known just exactly where his hand was, and not having a light did not know where it was.

He further testified: "I got my hand caught by the stick getting caught in the blades. * * * That [indicating on photograph] is not the position [standing up straight] I stood in, and nobody else does it either; do not care who it is. * * * I saw the day man do the same way I did, and clean it out. Standing straight up, you cannot see how to clean it out. Just to put the stick in the hole and work it around is not all that is necessary; it is right up in the back of the machine that you have to keep cleaned out mostly; it is not right there in front; you have to keep it all cleaned out. I had hold of one end of the stick, and stuck it into the hole and the knife caught it; that is the idea. There was nothing holding my hand to the stick, but it happened so quick; there are lots of accidents that happen that way. You take a small stick and let the knife catch it, of course, it is going to throw your hand in there before you know it. I did not have time to turn loose. * * * The only danger in the performance of my duties at that place was the danger of getting my hand caught in the knives. * * * The knives in the cylinder were not exposed to view. I could not see them. You can see them just as well if you do not have any light there, as if you had the light of the noonday sun there. The light did have something to do with this accident. I think if I had had a light I could have seen how far I had my arm in there. The machine was iron; if I had had a light, though, I could have seen the hole; if I had had a light, I think I would have known just how far I had the stick in the hole. Light would naturally enable me to know that more than I already knew it. I knew about where the knives were, but not exactly. Light would not have told me where they were; I did not say that either. I said if I had had a light I would have known more where my hand was. * * * I told Mr. Neal, the third night I was out there—and he said the same thing—that I needed more light to work by; he said there was insufficient light." Appellant's general foreman, Bartholomew, said: "If you had your arm up in there [the feeder], you could see what was left of your arm. If you could not see how much you had left, then the only way you could determine how much you had up in there would be to grope and feel around in the dark; if it was not light enough to see that part that was exposed, then you would have to sort of feel around and grope around in the dark to determine how much you had in there."

It appears, in addition to the above testimony, that some of the witnesses testified, and, so far as the record shows, without objection, that after appellee got hurt appellant caused to be installed incandescent lights right at the feeder where appellee was at work when he received his injuries, and that said lights were put in, among other reasons, to better the condition of the lights, to give better light. It is a well-established principal that, where sufficient lights are necessary to the safety of the servant, and the master negligently fails to furnish them, he will he liable in damages to the servant injured by reason of such negligence. The appellee in this case pleaded fully such an act of negligence on the part of the appellant, which was denied by it, and the evidence being conflicting on the issue it was properly submitted to the jury for determination.

[3] We do not agree to the appellant's proposition that insufficient light was not

and could not have been. the proximate cause of appellee's getting his fingers caught by the revolving cylinder in the kiln feeder. Whether the condition of the lights proximately caused the injuries of which appellee complains was a question under the evidence for the jury.

[4, 5] Nor do we think the trial court was authorized to say, as a matter of law, that the appellee assumed the risk of being injured as he was, or that he was guilty of contributory negligence. These were likewise issues of fact for the determination of the jury. The evidence was sufficient to warrant the finding that appellee was inexperienced in the work he was doing; that, while he knew the knives revolved inside of the feeder, yet he did not know just exactly where they were located therein, and that he was doing the work when injured as he was shown and instructed by appellant to do it; that, as soon as he discovered the danger of his hand coming in contact with the knives in the feeder because of the condition of the lights furnished him, he requested additional lights; that appellant promised to furnish additional lights and failed to comply with its promises; that appellee, relying upon this promise, continued in appellant's service, as an ordinarily prudent person under the circumstances would have done; and that, as a consequence of its negligence in failing to provide sufficient lights to enable appellee to perform the duties required of him safely, he received the injuries of which he complains. Railway v. Donnelly, 70 Tex. 373, 8 S. W. 52, 8 Am. St. Rep. 608; Railway v. Baker, 35 Tex. Civ. App. 542, 81 S. W. 67; Central City Ice & Cold Stor. Co. v. Tuck, 143 Ky. 346,.136 S. W. 642.

[6] Again, it appears that the appellant requested the court below to instruct the jury peremptorily to return a verdict in its favor, and also requested special charges submitting the issues of assumed risk and contributory negligence. The record does not show that the special charges upon the subjects of assumed risk and contributory negligence were requested after the court had acted upon and refused the peremptory charge and decided to submit the issues in the case; nor does it appear that they were asked to be given in the event the court refused to give the peremptory instruction. They were apparently presented at one and the same time, and asked to be given together. Having been so requested, it would seem that appellant is in no position to complain that there was no evidence authorizing the submission of the issues of assumed risk and contributory negligence. Views to this effect are expressed in the cases of Alamo Dressed Beef Co. v. Yeargan, 123 S. W. 721, and Alamo Oil & Refining Co. v. Curvier, 136 S. W. 1132, which seem to be authorized and supported by the case of Poindexter v. Receivers of

Kirby Lumber Co., 101 Tex. 322, 107 S. W. 42. This holding is based upon the theory that a party asking special charges in the manner stated participates in the error of submitting the issue, if error. there was in submitting it, and will not thereafter be heard to complain.

[7] A new trial should not have been granted, as contended by appellant, on the ground that the verdict is $300 in excess of the amount claimed in plaintiff's petition. As appears from the statement of the case, the plaintiff alleged serious and permanent injury to his hand, and that by reason thereof he had been damaged in the sum of $2,000. Following these allegations, he alleged. in substance, that for the hospital accommodations and medical attention made necessary by the injuries received by him he paid and promised to pay the sum of $300. Upon the filing of appellant's plea of a former suit pending, appellee filed a trial amendment. withdrawing or dismissing his claim for said $300. This action was practically the same as the filing of an amended petition, eliminating the claim for hospital and medical services, and seeking a recovery of $2,000 for the injuries alone received as the result of appellant's negligence. It did not have the effect of reducing the amount sued for by appellee to $1,700.

[8, 9] The admission of the testimony of Dr. Rosser as to the probable necessity of an operation on appellee's hand in the future, and complained of in the third assignment of error, does not constitute reversible error. This testimony, we think, was competent under the allegations of appellee's petition, without specific allegations that such an operation would probably become necessary, to show the extent of the injuries alleged. But, if we are mistaken in this, then the evidence complained of "could only have affected the amount of the recovery, and, as there is no complaint made that the verdict is excessive, the defendant could not have been harmed by its admission." Railway Co. v. Lynch, 40 Tex. Civ. App. 543, 90 S. W. 511.

The fourth assignment will also be overruled. The charge here complained of was not upon the weight of the evidence and an invasion of the province of the jury. It does not infringe upon the rule that, in the absence of a statute declaring a particular act to be negligence, it is error for the court to charge that such act constitutes negligence. On the contrary, the charge simply groups the facts which the court was of opinion would authorize a verdict for the appellee, and tells the jury that if they find from the evidence those facts to exist to return a verdict in favor of the appellee.

No reversible error has been pointed out, and the judgment of the court below will be affirmed.

Affirmed.