## FREEMAN v. GRASHEL.†

(Court of Civil Appeals of Texas. San Antonio. Feb. 28, 1912. On Motion for Rehearing, April 3, 1912.)

1. EVIDENCE (§ 473*)—OPINION EVIDENCE—CONCLUSIONS—CONDITION OF CAR.

In an action for personal injuries received while moving car wheels from a box car, testimony of the plaintiff that, as the wheels approached the blocks, they came very fast, and the wheel on the inside struck a low place, and that he knew there was a low place, and that from the wheels going down and running in that way he detected something wrong, though a conclusion as to the condition of the car, was admissible in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2220–2233; Dec. Dig. § 473.*]

2. DEPOSITIONS (§ 111*)—OBJECTIONS—WAIVER — EVIDENCE INTRODUCED BY PARTY OBJECTING.

Where defendant in an action for personal injuries offered a deposition of plaintiff taken before the trial, it thereby waived all objection to the testimony by introducing it and making it its own.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 329–339; Dec. Dig. § 111.*]

3. WITNESSES (§ 240*)—EXAMINATION—LEADING QUESTION—CONCLUSION OF WITNESS.

In an action for personal injuries received while plaintiff and two others were moving car wheels from a box car, a question to a witness for plaintiff, referring to the floor of the car and telling witness to go on and tell what he saw in regard to its condition and to describe the condition of the car, did not suggest the answer desired, and hence was not leading.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 795, 837–839, 841–845; Dec. Dig. § 240.*]

4. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS—INSTRUCTIONS ALREADY GIVEN.

Requested instructions as to matters presented by other instructions given are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

5. MASTER AND SERVANT (§ 291*) — ACTION FOR INJURIES—ISSUES AND PROOF—CONCURRING ACTS OF NEGLIGENCE.

Where the negligence of a railroad in having a defective car floor concurs with its negligence in furnishing incompetent fellow servants, both being alleged in a servant's action for injuries as distinct acts of negligence, the issue of the railroad's negligence in having a defective car floor may be submitted alone without the negligence in furnishing incompetent fellow servants, since defendant was responsible for such defect, even though not liable for the acts of the fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1147; Dec. Dig. § 291.*]

6. MASTER AND SERVANT (§ 286*) — ACTION FOR INJURIES—QUESTION FOR JURY.

In a servant's action for personal injuries, where there was testimony raising the issue that there was a depression in the floor of a car and that it was a direct cause of the injury to plaintiff, a requested instruction to return a verdict for defendant was properly refused.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

7. APPEAL AND ERROR (§ 882*)—REVIEW—INSTRUCTIONS—PARTY ENTITLED TO COMPLAIN.

Where defendant requests a charge submitting an issue to the jury, it cannot complain of the submission.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

8. APPEAL AND ERROR (§ 994*)—FINDINGS OF FACT — CONCLUSIVENESS — CREDIBILITY OF WITNESSES.

The credibility of witnesses is for the jury, and is finally settled by the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3901–3906; Dec. Dig. § 994.*]

9. MASTER AND SERVANT (§ 278*) — ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE.

Evidence in a servant's action for injuries while moving car wheels from a box car *held* sufficient to sustain a verdict for plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972, 977; Dec. Dig. § 278.*]

10. DAMAGES (§ 132*)—EXCESSIVE DAMAGES—PERSONAL INJURIES—AMPUTATION OF ARM.

Where there was uncontroverted evidence in an action for personal injuries that plaintiff's hand was crushed, and that it was amputated at the wrist, that he suffered greatly from it and was still suffering at the time of the trial, more than two years after the injury, that the injury had affected his nerves and health so that he could not obtain work, and that his lost hand prevented him from obtaining employment, a verdict of $13,500 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 178, 372–385, 396; Dec. Dig. § 132.*]

11. APPEAL AND ERROR (§ 1004*)—REVIEW—VERDICTS—AMOUNT OF RECOVERY.

An appellate court should exercise its power to set aside a verdict as excessive with the utmost circumspection, and should not interfere merely because it thinks the verdict too large, nor unless the damages are flagrantly outrageous and extravagant or actuated by passion or prejudice.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

### On Motion for Rehearing.

12. MASTER AND SERVANT (§§ 101, 102*)—MASTER'S LIABILITY — SAFE PLACE FOR WORK.

It is the duty of a master to use reasonable care to furnish a servant with a safe place in which to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178, 179, 180–184, 192; Dec. Dig. §§ 101, 102.*]

13. MASTER AND SERVANT (§§ 235, 124*) — MASTER'S LIABILITY—SAFE PLACE TO WORK—INSPECTION—RAILROAD CAR.

It is the duty of a railroad, if not of its employé, to inspect the floor of a car as being a place furnished to a servant for work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722, 235–242; Dec. Dig. §§ 235, 124.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

Appeal from District Court, Bexar County; Edward Dwyer, Judge.

Action by Frank Grashel against T. J. Freeman, as receiver of the International & Great Northern Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Jno. M. King, of Houston, and Hicks & Hicks, and F. C. Davis, all of San Antonio, for appellant. Perry J. Lewis and H. C. Carter, both of San Antonio, for appellee.

FLY, J. Appellee sued appellant, as the receiver of the International & Great Northern Railroad Company, to recover damages alleged to have accrued from personal injuries, inflicted on him through the negligence of appellant, while appellee was in the employment of appellant in the yards of the railroad company at San Antonio, Tex. It was alleged that on or about February 11, 1909, appellee was in the employ of appellant; that his foreman ordered him and two Mexicans to move certain car wheels from a box car; that appellee was in charge of the removal of the wheels, and was foreman of the two Mexicans, while performing the said work; that the wheels were attached to the axle and weighed about 3,000 pounds, and, the door of the car not being wide enough for the wheels to roll through, it required competent and experienced men to perform the service; that the floor of the car was old, worn, and out of repair, and very uneven; that blocks on which the axle was to be stopped were placed in the proper position before the door of the car, and it was the duty of the Mexicans to bring the wheels into position and to roll them and approach the blocks so as to stop the wheels when the axle reached the blocks; that, on account of the uneven condition of the floor, it became necessary for appellee to hold and keep the blocks steady on which the axle was to rest, before they could be tipped out the door, and the incompetent and inexperienced Mexicans permitted the wheels and axle to run with great velocity over the blocks; and that, together with the defective floor, caused one wheel to run out the door, and the other to fly up with great violence so as to crush the left hand and wrist of appellee against the door post, and he was so injured that it became necessary to amputate the hand and a portion of the wrist. Appellant answered that appellee had often unloaded car wheels and knew the dangers attendant thereon; that appellee, on the occasion in question, selected three of his coemployés to assist him in the work, who were men of intelligence and long experience in such work; that appellee directed the work and selected the means for unloading the car wheels; and that the inside wheel flew up because of the blocks being improperly placed by appellee and he was therefore guilty of contributory negligence. The court refused to submit the in-

competency of the Mexicans or their negligence in handling the wheels, but submitted the defect in the floor as the sole ground of negligence. The jury, in response thereto, returned a verdict for $13,500 in favor of appellee, and judgment for that sum was accordingly rendered.

Deferring to the verdict of the jury, we hold that there was evidence to show negligence in appellant in permitting a defect in the floor of the car, which caused the accident and resulted in the injuries to appellee.

[1] The first three assignments of error refer to the admission of evidence upon the part of appellee that, "as the wheels approached the blocks, they came very fast and the wheel on the inside struck a low place and increased the speed so much more and run over the end of the block," and, further, that he knew there was a low place "from the wheels going down and running is the way I detected something wrong." The only proposition is: "Where appellee did not actually see a depression in the car floor, but concluded that there was a depression there because of the manner in which the wheels acted, his testimony as to the existence of such depression was a mere conclusion and incompetent, and should have been excluded when objected to on that ground." The evidence was not open to the attack made upon it. The conclusions of persons as to the results of observations as to facts that commonly arise from certain conditions are admissible in evidence. Evidence in the nature of a conclusion as to the condition of a place or article is at times admissible. "The wind bloweth where it listeth, and thou hearest the sound thereof, but canst not tell whence it cometh, and whither it goeth;" and, yet if a tree goes down in its pathway, the person witnessing it could swear that it was uprooted by the storm. So, if a gun is fired and a man falls, the witness can swear that he was shot. It is reasoning from a known cause to an effect, or from a known effect back to the cause. It is permissible for a witness to swear that another was angry or intoxicated, excited or calm. These are matters of general experience that any one can testify about who knows them. As said by Justice Neill in the case of McCabe v. San Antonio Traction Co., 39 Tex. Civ. App. 614, 88 S. W. 387: "It is an exception to the general rule that witnesses cannot give conclusions or opinions that evidence of common observers, testifying to the results of their observation, made at the time, in regard to common appearances or facts, and a condition of things which cannot be reproduced and made palpable to a jury is admissible." In the case of Commonwealth v. Sturtivant, 117 Mass. 133, 19 Am. Rep. 401, cited in the McCabe Case, there is a thorough discussion of the question. It may be suggested that no case identical with this case can be found, and that is true, but, as said by Wigmore in his

work on Evidence, § 1978, after giving numbers of examples to substantiate the rule: "It may be suggested that the use of these rulings as definite and inflexible precedents would indicate a misunderstanding of their effect. They merely illustrate the application of the general principle to the facts of a given case, and their employment as permanent, unvarying rules, ignores the true significance of the general principle."

[2] The testimony objected to was offered in a more intense form, in a certain deposition of appellee, which was introduced in evidence by appellant. In that deposition he testified that the floor was badly worn and uneven. He testified: "I say the floor was what I called decayed. It was worn. I did nothing with reference to the decayed condition of the floor. I suppose it was a natural consequence of the unevenness of the floor for the wheels to roll like they did. That was natural. That is my best opinion of it. * * * If the floor had been smooth and sound the accident would not have occurred, to the best of my opinion. The floor was not smooth and sound when I put the blocks there. That is the first time I saw its condition, and but for which condition the accident would not have occurred." The evidence was not offered on cross-examination, but it was the evidence offered by appellant on its own responsibility. It was taken by appellant before the trial, and was offered in evidence by appellant, not on cross-examination, but as any other testimony offered by it, and appellant cannot escape the effect of it by the claim that it comes within the spirit of Cathey v. Railway (Sup.) 133 S. W. 417, 33 L. R. A. (N. S.) 103, which is in direct conflict with numerous decisions of this state, and which holds that a party does not waive an objection to evidence by bringing it out in a cross-examination. However, the testimony was not brought out on cross-examination, and appellant waived all objections to the testimony by introducing it and making it its own.

[3] The question addressed to witness, Charles Miller, by appellee, was, "Well, go on and tell us what you saw in regard to the condition"—referring to the floor of the car, which was objected to as leading, and the court overruled the objection and counsel for appellee then said: "Go on, and describe the condition of the car." The witness then testified: "When I got in the car to help Frank Grashel out, there was a lot of rubbish in front of the door or maybe a little away from the door. I can't exactly tell you. I said there was an impression in the floor about ten inches long, from the way the rubbish was shoved through the floor." There was nothing leading about the question propounded to the witness. It did not suggest the answer desired. Some suggestion must necessarily be given a witness as to what part of a subject it is desired to

elicit an answer, and a different rule would lead to interminable delay, and the mazy wanderings of the witness in the fields of evidence would be anything but conducive to the proper administration of law.

[4] The fifth, sixth, and seventh assignments of error are overruled. If the court failed in the main charge to present the defenses of appellant, the latter saw to it that every phase of its defenses was presented by special charges requested by it and given by the court. Eight special charges prepared by appellant were given by the court, and it is not contended that they did not contain every conceivable defense presented by appellant; the only complaint being that they were not in the charge prepared by the court. Doubtless the court omitted them from his charge, because he thought that appellant would be better satisfied with its own presentment of its defenses. They were fully presented, and that is sufficient.

[5] There were two or three grounds of negligence set out in the petition, and through the eighth assignment of error appellant complains because only one of them was presented to the jury. The proposition is: "Where two grounds of negligence are charged, and they are by the allegations of the petition so connected with each other as to require proof of both to establish a cause of action, it is error for the court by its charge to permit a recovery upon proof of only one of the said acts of negligence." The authorities cited do not sustain the proposition. If the negligence of appellant, in having a defective floor, concurred with the negligence of a fellow servant, appellant would be liable, and the negligence of appellant alone could be submitted without reference to the negligence of the fellow servant. This matter is fully settled in the case of Railway v. Callahan, 124 S. W. 129, and the numerous authorities therein cited. It cannot with any show of reason be contended that under the allegations of the petition and the evidence that the defective floor was not a concurring cause, at least, of the injuries to appellee, and appellant was responsible for it, even though they were not liable for the acts of the Mexican employés. Shippers Compress v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032. The acts of negligence in this case were clearly and specifically separated in the petition; it being alleged "that each of said acts of negligence were separate and distinct and each of said acts of negligence directly contributed to produce his said injuries."

[6] The requested instruction to the jury to find a verdict for appellant was properly refused. There was testimony raising the issue that there was a depression in the floor and that it was a direct cause of the injury to appellee.

[7] The issue as to the depression in the floor was presented by appellant to the jury through a requested charge which was giv-

en by the court, and appellant cannot complain of the submission of the issue. Poindexter v. Lumber Co., 101 Tex. 322, 107 S. W. 42; Alamo Beef Co. v. Yeargen, 123 S. W. 721; Alamo Oil Co. v. Curvier, 136 S. W. 1132.

[8] Appellant does not claim that there was no evidence to sustain the issue of the depression in the floor, but asserts that there was no "credible evidence," a matter that was settled by the jury, to whom the right to judge of the credibility of witnesses is confided by the laws of Texas.

[9] The tenth assignment of error is of the same import as the ninth, and questions the probative force of the testimony as to the depression in the floor. The evidence is not as full and strong as could be desired, but we do not feel disposed to disturb the verdict, because there was some testimony tending to prove the issue. Appellant admits there was some testimony, not only by its requested charges, but by its propositions. The other assignments of error are disposed of by the conclusions of this court as to the facts.

[10] The only evidence offered in regard to the injuries inflicted upon appellee was his own testimony. He swore that his hand was crushed and hung by the skin; that it was amputated at the wrist; that he had suffered greatly from it, and was still suffering at the time of the trial, which occurred more than two years after the injury was inflicted. He swore that the injury had affected his nerves and health to such an extent that he could not obtain work, and that his lost hand prevented him from obtaining employment. He detailed his sufferings from the loss of his hand, and no attempt was made to controvert his testimony. The verdict is very large, much larger than would have been rendered by this court had it been intrusted with the duty of weighing the evidence, but a jury has passed upon the amount of the damages, and this court is not authorized to interfere with their verdict, unless it appears from the record that the rules which justify a court in holding a verdict excessive can be applied to it.

The court instructed the jury that in assessing damages they could take into consideration the mental and physical pain of appellee and his diminished capacity to labor and earn money in the future. His injuries are undoubtedly permanent and had occasioned him great mental and bodily pain, and probably will continue to cause him suffering, and as said by the Supreme Court in Railway v. Randall, 50 Tex. 254: "Unless we say that an action should not lie for an injury for which there is no pecuniary measure of comparison, the amount of damages to be awarded in such cases must be left to what may reasonably be inferred to be the general sense of right and justice of the community, as indicated by the verdict of a jury of 12 men, ordinarily composed of persons engaged in different occupations and pursuits, and representing all grades and conditions of social life."

[11] In that case it was said that cases arise in which a court will set aside a verdict for being excessive, but that such power should be exercised "with the utmost circumspection and caution. The court should not interfere merely because it thinks the verdict too large. It is unquestionably one of the peculiar duties of the jury to assess damages; and because the law furnishes no legal rule for their admeasurement it does not warrant, but, on the contrary, should rather restrain, the court from substituting its sense of what would be a reasonable compensation for the injury complained of for that of the jury." The rule as laid down in the case cited is the rule still, and a court should not interfere with the verdict of a jury unless it appears that the damages are so excessive that they, as expressed by Chief Justice Kent in Coleman v. Southwick, 9 Johns. (N. Y.) 45, 6 Am. Dec. 253, "strike mankind at first blush as being beyond all reason unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess." We do not intend to intimate that appellate courts are powerless to relieve against unconscionable verdicts, because they have the undoubted power to require remittiturs, or to set aside verdicts altogether, but such power should never be exercised except when it is evident from the very size of the verdict, or other circumstances, that the amount of the verdict was the result of passion, prejudice, or corruption. In the Randall Case the verdict was for $12,000 for the loss of an arm, and in the case of Bonner v. Bean, 80 Tex. 152, 15 S. W. 798, a judgment for $5,000 for the loss of part of one finger and stiffness in the other fingers was approved. Following the rule as enunciated we decline to interfere with the verdict, as we cannot determine from the record that passion or prejudice entered into the rendition of the verdict. Appellant presents no reason for the verdict being excessive, except that appellee was about 50 years old, and that he was earning only $55 a month. The evidence shows $85 a month, however.

The judgment is affirmed.

## On Motion for Rehearing.

Appellee did not, as contended by appellant admit that he knew of the hole in the floor into which the wheel ran in the car, but, on the other hand, he testified that he knew nothing of any hole but the one he covered with the blocks. He testified: "As I stated before, there was some rubbish and dirt on the floor. I couldn't see any other

part except where I brushed the rubbish away to put the blocks. From the wheels going down and running is the way I detected something wrong. * * * Yes; I did answer that, if the floor had been smooth and sound, the accident would not have occurred, to the best of my opinion. * * * I didn't notify the men of the condition because it was covered by the blocks. Where I raked away there I put the blocks, that part. That was all I saw, right where I cleaned away. After the wheel sagged down in the hole, then I knew there was something wrong. I didn't see it before. * * * I could not see any part of the floor, except that little part that I raked away. * * * That place that I saw there did not have anything to do with the wheel going fast. The blocks were there." The witness, Charles Miller, testified: "When I got in the car to help Frank Grashel out, there was a lot of rubbish in front of the door, or maybe a little way from the door. There was an impression in the floor about four inches wide and about ten inches long from the way the rubbish was shoved through the floor." The testimony showed, without contradiction, that the floor of the car was covered with rubbish, that appellee uncovered only a small space upon which to place the blocks, that the accident occurred by reason of the wheel running into a large hole which was covered with rubbish and of the existence of which appellee had no knowledge.

[12] It was the duty of appellant to use reasonable care to furnish appellee with a safe place in which to perform the labor which he had been ordered to perform. The wheels were being unloaded in the usual way, and, if the floor of the car had not been rotten and unsafe, the accident would not have occurred.

[13] It was the duty of the master, and not of the servant, to inspect the floor of the car, the instrumentality furnished with which the servant was to perform the labor assigned to him. An ordinary inspection by the master would have revealed the unsafe condition of the floor of the car. The jury found that appellee did not assume the risk, and was not guilty of contributory negligence. The evidence sustains the verdict.

The motion is overruled.