ALAMO OIL & REFINING CO. v. CURVIER et al.†

(Court of Civil Appeals of Texas. April 12, 1911. Rehearing Denied May 10, 1911.)

1. APPEAL AND ERROR (§ 882*)—INSUFFICIENCY OF EVIDENCE—PARTY ENTITLED TO COMPLAIN.

A defendant who requests charges submitting issues to the jury cannot claim that there was no evidence, or insufficient evidence, to warrant the submission.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

2. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

In an action for the death of a servant by a pile of cotton seed falling on him, evidence held to justify a finding that the master negligently failed to maintain a safe place for the servant to work; and that no warning of the danger was given to deceased.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

3. MASTER AND SERVANT (§ 280*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

In an action for the death of a servant by a pile of cotton seed falling on him, evidence held to justify a finding that the risk was not ordinarily incident to the work, and that the danger was not open and obvious.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 280.*]

4. MASTER AND SERVANT (§ 281*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

In an action for the death of a servant by a pile of cotton seed falling on him, evidence held to justify a finding that he was not guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 281.*]

5. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—NEGLIGENCE.

A servant put to work at night to remove cotton seed from a pile was exposed to danger by seed falling on him; the lights being so dim that he could not well discover the condition of the upper part of the pile, which was 30 to 35 feet high. The vice principals of the master knew the perpendicular condition of the pile, and that such condition made the premises unsafe for servants. Supports would have prevented the pile from toppling over. The pile fell from the top due, not alone to the law of gravity, but to lack of supports. Held, that the death of the servant by the fall of the pile resulted, not alone from the action of gravity on the pile, but from the nonperformance of the master's duty to protect him, authorizing a recovery.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 107.*]

6. MASTER AND SERVANT (§ 205*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

A servant need not anticipate the master's negligence, and he does not assume the risks of the failure of the master to perform his duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 547; Dec. Dig. § 205.*]

7. APPEAL AND ERROR (§ 742*)—QUESTIONS REVIEWABLE—ASSIGNMENTS OF ERROR.

An assignment of error complaining of instructions given and refused, not followed by a proposition, will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

8. APPEAL AND ERROR (§ 216*)—QUESTIONS IN TRIAL COURT—INSTRUCTIONS—REQUESTS—NECESSITY.

In the absence of requested instructions defining contributory negligence and assumption of risk, the defeated party may not complain that the instructions failed to define those terms.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. § 627.]

9. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL TO GIVE INSTRUCTIONS COVERED BY THE CHARGE GIVEN.

It is not error to refuse requested charges covered by a special charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 561; Dec. Dig. § 260.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

† Writ of error denied by Supreme Court.

10. MASTER AND SERVANT (§ 217*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

A servant, to assume a risk, must know the danger, or, in the prosecution of his work, must necessarily know of it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 574; Dec. Dig. § 217.*]

11. DEPOSITIONS (§ 107*)—ADMISSIBILITY AS EVIDENCE—OBJECTIONS.

An objection to a deposition which has been on file for months before the trial, not made until after the case has proceeded to trial, and going only to the manner and form of taking the deposition, does not justify its suppression.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 309–319; Dec. Dig. § 107;* Trial, Cent. Dig. § 189.]

Appeal from District Court, Bexar County; Edward Dwyer, Judge.

Action by Guadalupe Curvier and others against the Alamo Oil & Refining Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Cobbs, Taliaferro & Cunningham, C. L. McCartney, and Carlos Bee, for appellant. Anderson & Belden, Perry J. Lewis, and H. C. Carter, for appellees.

JAMES, C. J. The petition of appellees is for damages accruing from the death of Juan Curvier, while in the employ of appellant.

It alleged that Juan Curvier was in the discharge of his duty in appellant's mill when a large pile of cotton seed fell upon him and smothered him; that the pile of seed was about 20 feet high, and defendant had negligently failed to furnish a proper or sufficient support for same to prevent it from falling, that if any support was furnished it the same was loose and defective and wholly insufficient to keep it from falling, and said pile was so maintained by defendant as to be in imminent danger of it falling and injuring employés, and, notwithstanding such danger, failed to provide any proper support for it, and negligently maintained it in a manner calculated to bring about such an accident as happened to Curvier; that in such circumstances defendant negligently placed this employé to work in a position of danger and in an unsafe place; that he had only been working for defendant two nights prior to this occurrence, on which nights, as well as on the night in question, the room and the space at which this seed pile was maintained was dark, and through defendant's negligence not sufficiently lighted to enable its employés to see and appreciate the danger to which its negligence exposed them; that Curvier did not know and appreciate the danger, and the accident occurred without fault on his part.

Defendant answered by demurrer, general denial, negligence of deceased; that if the work was dangerous, the dangers were open and obvious, were seen, or by the use of ordinary care by plaintiff could have been seen and understood; that he was fully advised of the dangers and properly instructed in reference thereto; that he assumed the risks; that the risks, if any, were the ordinary dangers attendant upon that class of work; that the place furnished him to perform his work was the usual and customary place and position furnished to workmen in that class and character of work; and the risks and dangers, if any, were known to deceased, or could have been known to him by the exercise of ordinary care.

There was a verdict for the sum of $11,500, apportioned among the plaintiffs.

The first assignment of error complains of the refusal to sustain defendant's motion for an instructed verdict, after plaintiff rested his case. We find nothing in the record showing such proceeding. The second assigns as error that, if the truth of all the evidence be conceded, the evidence does not support the verdict. The third complains of the refusal of a general peremptory charge.

It appears that defendant presented to the court a number of requested charges, all but one asking for the submission of the defense on material issues; the one referred to being the peremptory instruction for the defendant. There is nothing to show that the requested instructions, which were asked upon the theory that the condition of the testimony was such as warranted submission of the matters involved in them, were asked after the court had acted upon and refused the peremptory charge and decided to submit the issues, nor were they asked to be given in the event the court refused to give the peremptory charge. They were apparently all handed to the judge and asked together. Thus the court was asked to give them all; that is, to charge upon the theory that the testimony did not warrant a submission, and also upon the theory that it did. The peremptory charge should have been given, if the testimony did not substantiate defendant's negligence, and also if any one of the defensive issues, such as assumed risk or contributory negligence, was conclusively established by the evidence. Under such conditions the court must have been in doubt as to what defendant was really insisting on. This court has expressed itself on this very subject in Alamo Dressed Beef Co. v. Yeargan, 123 S. W. 721, where we stated that in these circumstances, if there was error in refusing the peremptory instruction and in giving the requested charges submitting the issues, defendant participated in it and could not complain.

[1] The result of this view is that the charges would stand precisely as if the charges submitting the issues had been asked without asking for a peremptory instruction, upon which theory it is well settled that defendant could not be heard to claim

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

that there was no evidence, or insufficient evidence, to warrant their submission. In the case above cited, a writ of error was refused; but it is not certain that the Supreme Court in doing so approved the above rule; hence we will not make it dispose of the assignments in question, and will proceed to consider the evidence.

### Conclusions of Fact.

There was testimony by defendant's superintendent that deceased applied to him for work the night before this occurrence, and he told him that he had nothing in the daytime; that the night foreman wanted a man, and to come back that night and probably he could get on, and he did it. This indicates that this was the first night of deceased's employment. By the testimony of others, he had worked two nights previous to this. The work at which he was put on the night of his death was at the base of a cotton seed pile 30 or 35 feet high, which pile at that time, according to some of the testimony, sloped upward at an angle of 45°, and from other testimony it was about perpendicular. The work being done was by deceased and another employé, Liserio, and consisted in one of them—on this occasion Liserio —scooping out cotton seed about three or four feet from the base of the pile with a fork and pitching it over to a conveyor some distance off, where deceased transferred it to a conveyor; the object being to remove the seed to where the lint would be taken from it.

All of the testimony shows that the seed which came down and buried Curvier fell or rolled off from the top of the pile, and not by the caving in of the pile. There was testimony showing that the seed would not necessarily roll from above when the pile stood at a perpendicular, even when you excavated out from under it. The superintendent gave this testimony: "Sometimes dirty seed will roll quicker than others. Sometimes they will roll at a pretty good slant; in fact, some seed you can dig and excavate out under, and still they won't roll. * * * Seed is not like wheat or corn, because the seeds have lint on them, and they cling together, and you can dig seed sometimes more than perpendicular, and the seed will hang over the top lots of times."

There was testimony that the place was dimly lighted, and that workmen could not see the upper portion of the pile. Liserio testified: "It is a fact that the cotton seed was piled very high, and that it was held back by steel or iron bands nailed to 2x4 posts and that it was an immense stack of cotton, inclosed in a sort of bin. * * * I did not notice that any of the bands were broken, but some of them were loose. You couldn't see very well because the globes and lights were dirty. It looked dark above the pile, and I could not see the top of the pile with the lights as they were."

The night superintendent or foreman testified: "The seed fell from the top of the pile; they fell over and buried him. I do not know whether the company knew of the condition of the pile of cotton seed or not. I was supposed to know it, and did know it. I hired and discharged the men. Yes, sir; I knew there was danger there, and I warned the men. Yes, sir; I knew the very thing that did happen might happen."

The superintendent testified: "Yes; when a wall reaches a perpendicular, it is more or less dangerous, in falling. It may or may not fall; sometimes it will stand, as I say, and sometimes you can dig under it, and it will stand there. * * * When it is perpendicular, men have no business to be allowed to work under it, unless there is some support for it."

On the subject of warning deceased, there was the testimony of the night superintendent and of the night watchman that they had warned deceased of the danger. The former testified: "I couldn't say how many times I warned him while he was there. I generally always told them every time I go out there.. * * * I believe I was there five minutes before the accident. Yes, sir; I cautioned them; the pile looked dangerous. I told them to be careful, both of them. Yes, sir; I cautioned them to watch out; to watch out for the seed. Yes, sir; the falling seed. Yes; I thought there was danger in the seed falling, at that time. Yes; I cautioned him when I first employed him. I think he was working two nights. * * * I think I cautioned him two or three times the first night he worked. I cautioned him the next night, but don't know how many times. Each time I cautioned him, it was about the danger of caving cotton seed. That is the danger I anticipated, and that is the danger I warned him to watch for. * * * In instructing the men how to work, I would always take the man out wherever he was to work, and were using the seed from, * * * and tell him how to watch the seed and how to work it down to keep from making a perpendicular."

The watchman stated that he warned Curvier five or six times that night. "Yes, sir; I warned them both clearly. Yes, sir; both of them knew the danger of this cotton seed; I told them and pointed to them, and told them to look out; the seed was likely to slide down, and if they didn't pay attention to it, they would probably get caught in the seed."

On the other hand, Liserio, the man who worked with deceased on the fatal night, testified that he never heard any one speak to Curvier. Perez, who it appears worked with him the other nights, testified that no one ever warned him about cotton seed falling on him. It was therefore a question for the jury which of the witnesses to believe, and whether or not any warning was given deceased.

[2-4] From the testimony we conclude that it was competent for the jury to find that de-

fendant was negligent in respect to maintaining a safe place for deceased to work; that deceased was not warned or made acquainted with the danger that overtook him; that the risk was not one that was ordinarily incident to the work he undertook to perform; that the danger of the seed falling as it did was not, under the circumstances, a danger open and obvious to him; that it was not a danger that he knew and appreciated, and that he was not guilty of any contributory negligence.

[5] The testimony does not bring this case within the class known as "gravity cases." Here was a man put to work in a place where, in the course of his work removing seed from a pile, he was exposed to danger of being injured by seed falling upon him. The vice principals of defendant knew the perpendicular condition of the pile at that time, and for some time previous, and that this condition made the premises unsafe for employés to prosecute the work, as is made clear by the superintendent, who stated, "When it is perpendicular, men have no business to be allowed to work under it, unless there is some support for it." There being no supports, or sufficient supports, which, according to this testimony, were required, in the exercise of proper care in the performance of defendant's duty to furnish its employés working at such place reasonably safe premises, it seems to us there can be no question as to there being sufficient testimony to establish negligence on the part of defendant. The question involved in the "gravity cases" is one of assumed risk; it being founded upon the presumed universal knowledge of the laws of nature.

In the present case it was shown by evidence that Curvier was not buried by the caving in of the pile, but by the falling of the pile from the top, due not alone to the law of gravity, but to a lack of, or insufficient, supports to the pile, to prevent it from toppling over. Curvier had worked there only a few nights; some testimony shows this was his first night; and it is apparent that he worked only at night, and the lights furnished were too dim to enable the condition of the upper part of the pile to be distinguished. The consistency of cotton seed with lint in it was such that the side of the pile might be perpendicular and overhanging, and yet not fall. There was testimony showing that this pile was not even perpendicular. The testimony showed that the representatives of defendant in charge of this work had knowledge for some time of the likelihood of this pile to fall in this very manner, and such knowledge was evidently obtained from observation, both at day and night—an opportunity that deceased did not have. Supports would, of course, counteract the operation of gravity and prevent the pile from toppling over; and if it was improper for the master to put raw men to work about the pile of seed in the condition it was known by him to be in, without

exercising reasonable care to provide supports for it, the employé would, nevertheless, have the right to rely upon the duty having been performed, unless he knew, or necessarily must have known, in the prosecution of his work of the failure or insufficient performance of the duty.

[6] He would not have to anticipate the master's negligence and assume the risks of the duty not having been performed. The testimony of the superintendent that when the pile is perpendicular men have no business to be, allowed to work under the pile, unless there is some support for it, and the admitted previous knowledge of the particular danger by defendant's representatives, and the failure to have it supported, created a condition that made the death of Curvier result, not alone from the action of gravity upon the seed pile, but from the nonperformance, or negligent performance, of an admitted duty which defendant owed its servant, under the existing circumstances, to protect them against such action. These facts remove this case from the class of cases referred to.

The tenth, eleventh, and twelfth assignments present the same general question concerning the court's general charge, in that: First. The jury were charged that if they should find that the place where deceased was put to work was dangerous, as alleged in plaintiffs' petition, and should further find that deceased was not guilty of contributory negligence, and that he did not assume the risk, to find for plaintiffs, thereby in effect instructing them that they might consider everything alleged in plaintiffs' petition as grounds for recovery, whereas some things alleged therein were in no wise supported by evidence. In support of this the brief states that plaintiffs alleged that defendant failed to furnish a proper support for the seed, and also alleged that deceased was placed in a position of danger, but failed to allege what constituted the dangerous place, and to these allegations the jury was referred, to determine whether the place was dangerous. The proposition embodied in the assignment, there being no separate proposition, simply complains of the want of evidence to support the allegation of dangerous premises, when the evidence did so. Second. That it is the duty of the court to point out to the jury in its charge the issues made by the pleadings, and it is error to instruct them that if they find the place was dangerous, "as alleged in the petition," they must find for the plaintiffs, when the allegations of the petition as to the facts which they claimed caused the place to be dangerous are obscure or uncertain. The brief fails to refer us to the allegations claimed to be vague and uncertain.

[7] The twelfth assignment makes another contention in the same line; but as it is without a proposition we do not consider it.

[8] We overrule the thirteenth, as the definition of negligence was correct; and the

fourteenth, which is that the court erred in not defining contributory negligence; and the fifteenth, which is that the court failed to define assumed risk, there being no instructions asked on these subjects.

We overrule the sixteenth and seventeenth assignments. The charge complained of as set forth in the brief did not place the burden of proof upon either party. We overrule the eighteenth, as the charge complained of was correct, and not subject to the criticisms made to it.

The twentieth complains of the refusal of a certain charge, which reads: "You are instructed that if you believe from the evidence, notwithstanding the work was dangerous, yet the place where the deceased and servants were instructed to stand and the manner in which they were directed to do the work afforded a reasonably safe place to do their work, or that he was informed of the danger, no other duty rests on the defendant. If you further believe, by the use of ordinary care and intelligence, that the deceased could have protected himself from all such dangers and failed to do so, you will find for the defendant."

[9] The proposition under this assignment is: "The defendant having specifically pleaded that the deceased was advised of the dangers attendant upon his work, and there being evidence in the record to support the allegation, it was error for the court to refuse to charge the jury that if deceased was instructed in the work and informed of the dangers he could not recover, where the general charge is silent upon the point." We find that a number of special charges were given fully covering this matter.

[10] The special charge which is the subject of the twenty-first assignment was correctly refused, for the reason that it is not the correct rule of assumed risk that "a man of ordinary intelligence knew, or could have known, of the danger." The rule is that he must know, or in the prosecution of his work must necessarily have known, of it. Besides this the court gave other special charges requested by defendant on assumed risk fully as favorable and explicit as this one. The same is true of the refused charges referred to by the twenty-second assignment. The twenty-third, twenty-fourth, and twenty-fifth assignments the brief refers to the proposition under the twenty-first, which is not a proposition of law founded upon the substance of these assignments.

The twenty-sixth assignment is overruled. The court charged that if the jury believed from the evidence that deceased was guilty of contributory negligence, or that he assumed the risk as alleged by defendant, then to find for defendant. The proposition is "that it was error to submit to the jury a vague and indefinite direction to discover from defendant's pleadings and the evidence whether the defendant has properly alleged, and the evidence fully proves, that deceased was guilty of 'contributory negligence.'" The brief does not attempt to show that the pleading was confusing on the subject, and the whole point seems to be that the court failed to define contributory negligence. The charge defining negligence was correct; hence the twenty-seventh assignment is overruled.

[11] We overrule the twenty-eighth and twenty-ninth assignments. The deposition of Liserio was not objected to until after the case had proceeded to trial, and it had been on file more than one day previous to the trial, in fact, for months. The objection went to the manner and form of taking, and the motion to suppress was properly overruled.

Judgment affirmed.