## DATO v. GEORGE W. ARMSTRONG & CO., Inc.   (No. 10026.)*

(Court of Civil Appeals of Texas. Fort Worth. July 1, 1922. On Motion for Rehearing, Oct. 28, 1922. Further Rehearing Denied Nov. 25, 1922.)

Master and servant ⬷=301(4)—Negligence of employés acting under directions of person injured held not chargeable to employer.

Plaintiff, an experienced welder, was employed by defendant company to do repair work, and when the tank of a gas generator used in the work broke, he told defendant's superintendent to clean the tank while he was getting tools to repair it by welding it. Neither the superintendent nor any other of defendant's employés knew anything about what was necessary to be done to make the tank safe and they were entirely subject to plaintiff's directions in this. Because of their failure to clean all the gas out of the tank, it exploded, injuring plaintiff while he was welding it. Held that defendant's employés, including the superintendent, were in effect loaned to plaintiff, acting as independent contractor, to act under his directions in cleaning the tank, so that their negligence was not chargeable to defendant.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by Ed Dato against George W. Armstrong & Co., Incorporated. From judgment for defendant, plaintiff appeals. Affirmed.

Bradley Burns, Christian & Bradley, of Fort Worth, for appellant.

Slay, Simon, Smith & Morris and Armstrong & Powell, all of Fort Worth, for appellee.

DUNKLIN, J.  George W. Armstrong & Co., Incorporated, owns and operates an iron foundry in the city of Fort Worth. Ed Dato, who was a welder by trade, was employed by Fred Barney, superintendent of the oil well supply department of the company, to do some repairs on a gear wheel in the oil well supply department; such repair work requiring the services of a welder. A gas generator was used in making such repairs, and while Dato was using it for that purpose the tank of the generator bursted. Dato then undertook to repair the generator, and while so engaged there was an explosion of the gas inside of the tank which threw debris into his face and destroyed the sight of one eye and lacerated one side of his face. He instituted this suit against the company to recover damages for the injuries so sustained.

It was alleged in plaintiff's petition that before he attempted to repair the generator, Fred Barney, the superintendent, promised to have it cleaned out and ready for him to begin the repair work at soon as he could go and get his tools which he would use in doing the work. It was further alleged that plaintiff gave directions to Fred Barney and to the foreman of the labor gang and other employés working in that department as to the manner in which the gas should be washed out of the tank of the generator, which instructions, it was alleged, Fred Barney promised plaintiff should be carried out and performed by the time the plaintiff was ready to repair the same. It was further alleged that plaintiff then went after the tools necessary for the work, and when he returned he was assured by the foreman of the labor gang that the gas had been thoroughly washed out of the generator, in compliance with his instructions, and that there was then no gas in the same; that, relying upon the promise of Fred Barney, to have the tank of the generator properly cleaned out and upon the assurance of the foreman of the labor gang that it had been thoroughly washed out in accordance with his instructions, plaintiff began to weld the hole in the tank of the generator; and that while so engaged the explosion occurred.

Plaintiff's claim for damages was based upon allegations of negligence on the part of Fred Barney, the superintendent, in failing to comply with his promise to have the generator cleaned of gas, and also upon the further ground of alleged negligence on the part of the foreman of the labor gang in assuring him that the gas had been washed out of the generator before he undertook to repair the same.

The case was tried before a jury upon special issues submitted to them. One of the findings of the jury was that Fred Barney did not promise plaintiff to have the generator cleaned out as alleged by him. In answer to further issues the jury found that the plaintiff instructed employés of the defendant as to the manner in which the generator should be washed and cleaned of gas, but that his instructions were not complied with, and that the failure of such employés to comply therewith was negligence, which was the proximate cause of plaintiff's injuries. The jury further found that plaintiff did not learn or believe that the generator contained anything which might cause it to explode before he undertook to repair it. Three other issues submitted to the jury and their answers thereto are as follows:

---

⬷=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted January 10, 1923.

"Question No. 6: 'Did an employé of the defendant in authority tell the said Ed Dato before he began working on said generator that the gas had been cleaned out of same? Answer: Cannot agree.

"Question No. 13: In what amount, if any, has plaintiff been damaged by reason of the injuries received? Answer: $12,462.00.

"Question No. 14: Was the plaintiff guilty of contributory negligence, as that term is above defined, in performing the work upon the gas generator, which exploded, at the time and place and in the manner which you may find he did perform the work? Answer: Do not agree."

After receiving that verdict of the jury the court rendered judgment in favor of the defendant, and from that judgment plaintiff has prosecuted this appeal.

The principal contention made by appellant is that there was a mistrial by reason of the failure of the jury to make any finding in answer to question No. 6, copied above; that question being whether or not plaintiff was assured that the generator had been properly cleaned of the gas before he attempted to repair it. In other words, it is insisted that negligence of the defendant in that respect was sufficient of itself to support a recovery, independent of the other issue of negligence which was determined adversely to him.

The testimony showed without controversy that plaintiff was an experienced and skilled welder, and that such was the trade in which he was engaged, and that on prior occasions he had been called on by the defendant to do welding work, and had performed such services. The proof also showed without controversy that neither Fred Barney nor any other employé of the defendant knew, or claimed to know, anything about what was necessary to be done in order to make the generator safe for use in welding the hole that was in it. Those matters were left entirely to the plaintiff, and his decision upon those questions was within the scope of his employment. The proof further showed that a Mexican employé, named Pete Brionas, cleaned the generator while plaintiff had gone away to get his tools with which to weld it. He testified as follows:

"When Dato left he told me to take the carbide out and take the water out of the generator and wash it out. Mr. Dato told me that when he got his own outfit out there that he would fix the tank; he told me to take the carbide and water out of the tank, and wash the tank out good, and I did that.

"I know what carbide is. I pulled the hook up and down like this (indicating) and that let the carbide down in the water, and then I opened the valve on the bottom of the generator and shook the generator and let the water run out of the generator; then I put some more water in the generator and shook it up again, and then let the water out. I did that two times. I put about four buckets of water in the generator each time.

"The way I cleaned out the generator wasn't the way Mr. Dato told me to clean it out; he never told me anything about how to clean it out, but just told me to wash it out. He didn't tell me how to get the carbide out.

"My boss out at the bolt works and the man who was giving me my orders was Mr. Chester Jenkins. Mr. Jenkins gave me my orders with reference to this welding job on the gear wheel that morning."

But plaintiff testified as follows:

"I told Fred Barney first in his office outside the machine shop to run the water through the generator, put a hose in it and run the water through it, and after it was full of water to let the water run out and fill it up again and let the water run out. I told him to do that two or three times. I told Fred Barney to have it washed out, first in his office, and then we walked on outside where the generator was, and I told them both out there to wash it out. I told them to wash it out—how to fix it; how to do it. In order to clean the generator out they had to get the carbide out of it. I didn't tell the Mexican anything with reference to cleaning the generator."

Chester Jenkins was the defendant's superintendent, and the testimony showed that he was called "Shorty." Plaintiff testified as follows with reference to what occurred when he returned with his equipment for use in welding the generator:

"When I stepped up to the generator I asked Shorty if he had washed the generator out like I told him, and he said he had, and that the valves were open. At that time I had my torch in my hand and also my glasses, so I said, 'All right,' and started to work and the generator blew up."

In 18 R. C. L. p. 784, the following is said:

"The fact that an employé is the general servant of the employer does not, as a matter of law, prevent him from becoming the particular servant of another, who may become liable for his acts. And it is true as a general proposition that when one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him. In determining whether, in respect to a particular act, a loaned servant is the servant of his original master or of the person to whom he is furnished, the general test is whether the act is done in the business of which the person is in control as a proprietor, so that he can at any time stop or continue it and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result. The mere fact that the general employer continues to pay the wages of a servant lent by him will not make him liable for the servant's acts, where the person to whom he is lent controls him entirely in regard to the work to be done."

In Cunningham & Ellis v. Kate A. Moore, 55 Tex. 373, 40 Am. Rep. 812, occurs the following:

"It is a well-settled principle, founded on reason and supported by abundant authority, that the relation and liabilities of the master depends upon the right of control over the servant."

To the same effect is Cunningham v. I. & G. N. Ry. Co., 51 Tex. 503, 32 Am. Rep. 632; 18 R. C. L. p. 782; Powell v. Construction Co., 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925; Byrne v. Kan. City, Ft. S. & M. R. Ry. Co., 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693.

Apparently, the trial judge rendered judgment for the defendant upon the theory that, since plaintiff as an expert undertook the work of repairing the generator and undertook to control and direct the manner in which the tank should be cleaned of gas, any negligence on the part of the persons who cleaned the generator would not be chargeable to the defendant, under and by virtue of the rule announced in the authorities just cited, and that under such circumstances plaintiff's reliance upon the assurance given him that the generator had been cleaned according to his previous directions was at his own peril. In other words, it is apparent that the court was of the opinion that any negligence, on the part of the persons who had undertaken to clean the generator, in assuring the plaintiff that it had been properly cleaned, could not be legally chargeable to the defendant, and therefore the failure of the jury to make a finding upon that issue was immaterial.

We are of the opinion that if plaintiff had been present while the generator was being cleaned and had there personally directed the cleaning of the same; or if he had committed the cleaning of the generator to Pete Brionas and had instructed him how to clean it and later relied on his assurance that it had been properly cleaned, the authorities above cited would have been controlling, and the defendant would not have been liable for any assurances given by any other employé that the same had been properly cleaned. But we do not believe that the testimony is of such a conclusive nature as to render immaterial the failure of the jury to return a verdict in answer to issue No. 6, quoted above. As noted already, plaintiff testified that he did not instruct Pete Brionas to clean the generator or give him any instructions as to how the same should be done. According to his testimony, his instructions as to the manner in which the work should be done were given to Fred Barney, and if his testimony should be believed by the jury, either Fred Barney or the superintendent Jenkins must have selected Pete Brionas to do the work of cleaning, and must have given him instructions as to how the same should

be done, and since according to all the testimony plaintiff was not present when the generator was cleaned, we do not believe it can be said as a conclusion of law that he would not have the legal right to rely upon the assurance given him by Jenkins that the generator had been properly cleaned and was entirely free of gas.

The failure of the jury also to make a finding upon the issue of contributory negligence upon the part of the plaintiff furnishes no ground for complaint upon the part of the appellant that the judgment should be reversed on that account, but of course it will be necessary upon another trial for the jury to pass upon that issue, in the event of a finding sustaining plaintiff's allegations of negligence.

Accordingly, we are of the opinion that the judgment should be reversed by reason of the failure of the jury to determine the issue of negligence on the part of defendant, submitted to them in question No. 6, and that the cause should be remanded for another trial; and it is so ordered.

On Motion for Rehearing.

Upon further consideration we have reached the conclusion that we erred in holding, in effect, that if the appellee's labor foreman, Jenkins, negligently assured appellant that the generator had been properly cleaned out and was entirely free of gas, and if such assurance was relied on by appellant, and induced him to begin work on the generator, and if the assurance so given by Jenkins was the proximate cause of appellant's injury, then appellee would be liable for such negligence on the part of Jenkins.

We are now of the opinion that, by reason of all the facts set out in the original opinion and the authorities cited, Jenkins, as well as defendant's other employés who actually cleaned the generator, should be held to be legally appellant's own servants with respect to the entire undertaking of cleaning the generator, and that the appellee was not legally chargeable for any injury suffered by appellant as a proximate result of the negligence of any of those servants, even though they continued to be in the general employment of appellee. With respect to the undertaking on the part of the appellant to repair the generator, Jenkins and all other employés of the defendant were under his control and direction, and such persons were in effect loaned to appellant for the purpose of assisting him to accomplish a work which he had undertaken as an independent contractor. And since all of those persons were legally his immediate servants for the purpose of performing the work so undertaken by him, appellee was not liable to him for damages resulting from the negligence of any of them.

And under such circumstances the rule that the master owes the duty to exercise

ordinary care to furnish his servant a reasonably safe place to work has no application, as settled by such authorities as G., C. & S. F. Ry. v. Clement (Tex. Civ. App.) 220 S. W. 407; Id. (Tex. Com. App.) 236 S. W. 714; Magnolia Petroleum Co. v. Ray (Tex. Civ. App.) 187 S. W. 1085.

Accordingly, appellee's motion for rehearing is granted, the judgment heretofore rendered by this court reversing the judgment of the trial court is set aside, and the judgment of the trial court is in all things affirmed.