142 Pac. 104, was a lease on apartments; Micks et al. v. Stevenson, 22 Ind. App. 475, 51 N. E. 492, was a sale of corporation stock; E. R. and D. C. Kolp v. Brazer (Tex. Civ. App.) 161 S. W. 899, was a case in which the agent had made a sale of several cars of feedstuff; the case of Keener v. Cleveland, above cited, was the sale of an oil lease; and in all these cases the law as above quoted from Corpus Juris is upheld.

We therefore answer that, under the conditions stated in the question above set out, the agent was entitled to his commission.

CURETON, C. J. The opinion of the Commission of Appeals answering certified question is adopted and ordered certified to the Court of Civil Appeals.

---

## DATO v. GEORGE W. ARMSTRONG & CO., Inc.   (No. 439–3917.)

(Commission of Appeals of Texas, Section B. April 23, 1924.)

**1. Master and servant ⚖══332(5)—Answers to special issues held finding of employés' negligence.**

Where issues as to whether defendant's employés were negligent, and such negligence was proximate cause of plaintiff's injuries, were submitted specially, and jury declared that failure of employés to clean gas out of generator was negligence, and that such negligence of defendant's employés was proximate cause of injuries, it was finding that injuries were due to defendant's negligence, which proximately caused plaintiff's injuries.

**2. Trial ⚖══356(6)—Failure of jury to agree on issue of contributory negligence held mistrial.**

In personal injury action, where jury found that defendant's negligence was proximate cause of plaintiff's injuries, but could not agree on submitted issue as to his contributory negligence, failure so to agree had effect of mistrial.

**3. Jury ⚖══37—Judgment contrary to finding held invasive of jury's province.**

In personal injury action, where jury found that negligence of defendant's employés was proximate cause of injuries, but did not agree on issue as to plaintiff's contributory negligence, and the trial court, instead of dismissing the jury because of a mistrial, rendered judgment for defendant on findings, and Court of Civil Appeals found that servants whose negligence caused the injuries were plaintiff's servants, contrary to the jury's findings, such action was invasive of jury's province.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Ed. Dato against Geo. W. Armstrong & Co., Inc. Judgment for defendant was affirmed by the Court of Civil Appeals

(245 S. W. 955), and plaintiff brings error. Reversed and remanded for new trial.

Burns, Christian, Gumm & Gordon and Braley & Bradley, all of Fort Worth, for plaintiff in error.

Armstrong & Powell and Slay, Simon, Smith & Morris, all of Fort Worth, for defendant in error.

HAMILTON, J. In order to show the disposition made of the case by the Court of Civil Appeals and the grounds thereof, we quote from the opinion of that court, preferring to sacrifice brevity for certainty:

"George W. Armstrong & Co., Incorporated, owns and operates an iron foundry in the city of Fort Worth. Ed Dato, who was a welder by trade, was employed by Fred Barney, superintendent of the oil well supply department of the company, to do some repairs on a gear wheel in the oil well supply department; such repair work requiring the services of a welder. A gas generator was used in making such repairs, and, while Dato was using it for that purpose, the tank of the generator bursted. Dato then undertook to repair the generator, and while so engaged there was an explosion of the gas inside of the tank, which threw débris into his face, and destroyed the sight of one eye, and lacerated one side of his face. He instituted this suit against the company to recover damages for the injuries so sustained.

"It was alleged in plaintiff's petition that before he attempted to repair the generator Fred Barney, the superintendent, promised to have it cleaned out and ready for him to begin the repair work as soon as he could go and get his tools which he would use in doing the work. It was further alleged that plaintiff gave directions to Fred Barney and to the foreman of the labor gang and other employés working in that department as to the manner in which the gas should be washed out of the tank of the generator, which instructions, it was alleged, Fred Barney promised plaintiff should be carried out and performed by the time the plaintiff was ready to repair the same. It was further alleged that plaintiff then went after the tools necessary for the work, and when he returned he was assured by the foreman of the labor gang that the gas had been thoroughly washed out of the generator, in compliance with his instructions, and that there was then no gas in the same; that, relying upon the promise of Fred Barney to have the tank of the generator properly cleaned out, and upon the assurance of the foreman of the labor gang that it had been thoroughly washed out in accordance with his instructions, plaintiff began to weld the hole in the tank of the generator, and that while so engaged the explosion occurred.

"Plaintiff's claim for damages was based upon allegations of negligence on the part of Fred Barney, the superintendent, in failing to comply with his promise to have the generator cleaned of gas, and also upon the further ground of alleged negligence on the part of the foreman of the labor gang in assuring him that the gas had been washed out of the generator before he undertook to repair the same.

"The case was tried before a jury upon spe-

cial issues submitted to them. One of the findings of the jury was that Fred Barney did not promise plaintiff to have the generator cleaned out as alleged by him. In answer to further issues the jury found that the plaintiff instructed employés of the defendant as to the manner in which the generator should be washed and cleaned of gas, but that his instructions were not complied with, and that the failure of such employés to comply therewith was negligence, which was the proximate cause of plaintiff's injuries. The jury further found that plaintiff did not learn or believe that the generator contained anything which might cause it to explode before he undertook to repair it. Three other issues submitted to the jury, and their answers thereto are as follows:

"'Question No. 6: Did an employé of the defendant in authority tell the said Ed Dato before he began working on said generator that the gas had been cleaned out of same? Answer: Cannot agree.

"'Question No. 13: In what amount, if any, has plaintiff been damaged by reason of the injuries received? Answer: $12,462.

"'Question No. 14: Was the plaintiff guilty of contributory negligence, as that term is above defined, in performing the work upon the gas generator, which exploded, at the time and place and in the manner which you may find he did perform the work? Answer: Do not agree.'

"After receiving that verdict of the jury, the court rendered judgment in favor of the defendant, and from that judgment plaintiff has prosecuted this appeal.

"The principal contention made by appellant is that there was a mistrial by reason of the failure of the jury to make any finding in answer to question No. 6, copied above; that question being whether or not plaintiff was assured that the generator had been properly cleaned of the gas before he attempted to repair it. In other words, it is insisted that negligence of the defendant in that respect was sufficient of itself to support a recovery. Independent of the other issue of negligence which was determined adversely to him.

"The testimony showed without controversy that plaintiff was an experienced and skilled welder, and that such was the trade in which he was engaged, and that on prior occasions he had been called on by the defendant to do welding work, and had performed such services. The proof also showed without controversy that neither Fred Barney nor any other employé of the defendant knew, or claimed to know, anything about what was necessary to be done in order to make the generator safe for use in welding the hole that was in it. Those matters were left entirely to the plaintiff, and his decision upon those questions was within the scope of his employment. The proof further showed that a Mexican employé, named Pete Brionas, cleaned the generator while plaintiff had gone away to get his tools with which to weld it. He testified as follows: 'When Dato left he told me to táke the carbide out and take the water out of the generator and wash it out. Mr. Dato told me that when he got his own outfit out there that he would fix the tank; he told me to take the carbide and water out of the tank, and wash the tank out

260 S.W.—65

good, and I did that. I know what carbide is. I pulled the hook up and down like this (indicating), and that let the carbide down in the water, and then I opened the valve on the bottom of the generator and shook the generator, and let the water run out of the generator; then I put some more water in the generator and shook it up again, and then let the water out. I did that two times. I put about four buckets of water in the generator each time. The way I cleaned out the generator wasn't the way Mr. Dato told me to clean it out; he never told me anything about how to clean it out, but just told me to wash it out. He didn't tell me how to get the carbide out. My boss out at the bolt works and the man who was giving me my orders was Mr. Chester Jenkins. Mr. Jenkins gave me my orders with reference to this welding job on the gear wheel that morning.'

"But plaintiff testified as follows: 'I told Fred Barney first in his office outside the machine shop to run the water through the generator, put a hose in it, and run the water through it, and after it was full of water to let the water run out and fill it up again and let the water run out. I told him to do that two or three times. I told Fred Barney to have it washed out, first in his office, and then we walked on outside where the generator was, and I told them both out there to wash it out. I told them to wash it out—how to fix it; how to do it. In order to clean the generator out they had to get the carbide out of it. I didn't tell the Mexican anything with reference to cleaning the generator.'

"Chester Jenkins was the defendant's superintendent, and the testimony showed that he was called 'Shorty.' Plaintiff testified as follows with reference to what occurred when he returned with his equipment for use in welding the generator: 'When I stepped up to the generator I asked Shorty if he had washed the generator out like I told him, and he said he had, and that the valves were open. At that time I had my torch in my hand and also my glasses, so I said, "All right," and started to work, and the generator blew up.'

"In 18 R. C. L. p. 784, the following is said: 'The fact that an employé is the general servant of the employer does not, as a matter of law, prevent him from becoming the particular servant of another, who may become liable for his acts. And it is true as a general proposition that when one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him. In determining whether, in respect to a particular act, a loaned servant is the servant of his original master or of the person to whom he is furnished, the general test is whether the act is done in the business of which the person is in control as a proprietor, so that he can at any time stop or continue it and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result. The mere fact that the general employer continues to pay the wages of a servant lent by him will not make him liable for the servant's acts, where the person to

whom he is lent controls him entirely in regard to the work to be done.'

"In Cunningham & Ellis v. Kate A. Moore, 55 Tex. 373, 40 Am. Rep. 812, occurs the following: 'It is a well-settled principle, founded on reason and supported by abundant authority, that the relation and liabilities of the master depends upon the right of control over the servant.'

"To the same effect is Cunningham v. I. & G. N. Ry. Co., 51 Tex. 503, 32 Am. Rep. 632; 18 R. C. L. p. 782; Powell v. Construction Co., 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925; Byrne v. Kan. City, Ft. S. & M. R. Ry. Co., 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693."

On direct hearing the Court of Civil Appeals reversed the judgment of the trial court, and remanded the cause for a new trial, but on motion for rehearing said:

"We are now of the opinion that, by reason of all the facts set out in the original opinion and the authorities cited, Jenkins, as well as defendant's other employés who actually cleaned the generator, should be held to be legally appellant's own servants with respect to the entire undertaking of cleaning the generator, and that the appellee was not legally chargeable for any injury suffered by appellant as a proximate result of the negligence of any of those servants, even though they continued to be in the general employment of appellee. With respect to the undertaking on the part of the appellant to repair the generator, Jenkins and all other employés of the defendant were under his control and direction, and such persons were in effect loaned to appellant for the purpose of assisting him to accomplish a work which he had undertaken as an independent contractor. And, since all of those persons were legally his immediate servants for the purpose of performing the work so undertaken by him, appellee was not liable to him for damages resulting from the negligence of any of them."

The court then set aside its judgment reversing, and entered judgment affirming the judgment of the trial court (Tex. Civ. App.) 245 S. W. 955.

Plaintiff pleaded that the agents, servants, and employés of defendant negligently failed to cleanse and wash out said generator, and that failure to wash it out was negligence, which directly and proximately caused plaintiff's injuries. Defendant, among various other pleas, pleaded a general denial. Thus there was put in issue the question of whether or not defendant's employés were negligent and whether, if negligent, such negligence was the proximate cause of plaintiff's injuries.

[1] In order to get the whole matter in proper perspective, we set out all of the special issues submitted and the jury's disposition of them as follows:

"Question 1: Did the defendant George W. Armstrong & Co., Inc., acting through Fred Barney, promise plaintiff that the gas in said generator would be cleaned out of same be-fore the plaintiff, Ed Dato, returned to work on said generator? Answer: No.

"Question 2: If you have answered the above question in the negative, you need not answer the following question, but, if you have answered the same in the affirmative, then you will further state whether or not any of the employés of the defendant company cleaned the gas out of said generator before the plaintiff returned to work on same? Answer: ——.

"Question 3: If you have answered the above question in the affirmative, you need not answer the following question, but, if you have answered the same in the negative, then you will further state whether or not the failure of the employés of the defendant to clean the gas of said generator was negligence, as the term 'negligence' is above defined? Answer: Yes.

"Question 4: If you have answered the above question in the negative, you need not answer the following question, but, if you have answered the same in the affirmative, then you will further state whether or not such negligence, if any, upon the part of the employés of the defendant company was the proximate cause, as the term 'proximate cause' is above defined, of plaintiff's injury? Answer: Yes.

"Question 5: If you have answered question No. 1 in the negative, you need not answer the following question, but, if you have answered the same in the affirmative, then you will further state whether or not plaintiff, Ed Dato, relied upon such promise of the said Fred Barney that he would have the gas cleaned out of said generator before the plaintiff returned to work on same, and whether or not said plaintiff was induced to begin work on said generator at the time and in the manner in which he did begin said work, by reason of said promise? Answer: ——.

"Question 6: Did an employé of the defendant company in authority tell the said Ed Dato before he began working on said generator that the gas had been cleaned out of same? Answer: Cannot agree.

"Question 7: If you have answered the above question in the negative you need not answer the following question, but, if you have answered the same in the affirmative, then you will further state whether or not such statement, if made, was true? Answer: ——.

"Question 8: If you have answered Question No. 6 in the negative, you need not answer the following question, but, if you have answered the same in the affirmative, then you will further state whether or not the plaintiff Ed Dato relied and acted upon said statement? Answer: ——.

"Question 9: After beginning to work upon the generator, did the plaintiff, Ed Dato, learn or believe that said generator contained anything which might cause it to explode, if he continued to work, in time for him to have stopped said work and have avoided the injury? Answer: No.

"Question 10: Did the plaintiff instruct and direct any of the employés of the defendant company as to how said generator should be washed and cleaned? Answer: Yes.

"Question 11: If you have answered the above question in the negative you need not answer the following question, but, if you have

answered the same in the affirmative, then you will further state whether or not such employés of the defendant followed the instructions of the said plaintiff in washing and cleaning said generator? Answer: No.

"Question 12: Was the injury of plaintiff the result of an accident, and not proximately caused by the negligence on the part of any one? Answer: No.

"Question 13: In what amount, if any, has plaintiff been damaged by reason of the injuries received by him from the explosion of the generator belonging to the defendant company? Answer: $12,462.

"Question 14: Was the plaintiff guilty of contributory negligence, as that term is above defined, in performing the work upon the gas generator, which exploded, at the time and place and in the manner which you' may find he did perform the work? Answer: Do not agree.

"Question 15: If you have answered the above question No 14 in the negative, you need not answer the following question, but, if you have answered the same in the affirmative, then you will further state whether or not such contributory negligence, if any, upon the part of the plaintiff proximately caused or contributed to proximately cause the injuries received by him upon the occasion in question? Answer: ———."

By an inspection of these issues and the answers of the jury thereto, it is seen that in response to question No. 3 the jury declared that the failure of the *employés of the defendant* to clean the gas out of said generator was negligence. By its answer to question No. 4 the jury said such negligence upon the part of the *employés of the defendant company* was the proximate cause of plaintiff's injuries. Responding to question No. 13, the jury found that plaintiff had been damaged by reason of the injuries received in the sum of $12,462. (Italics ours).

We think the answer of the jury to each of issues Nos. 3 and 4 is a finding by them that plaintiff's injuries were due to the negligence of defendant's employés, and that their negligence proximately caused plaintiff's injuries. It is so clear to us that such is the finding that it needs no argument to establish it. Each says so in language plain, direct, and unequivocal. We can see no reason to ignore such language. Each is not only such a finding, but it is a finding on an issue presented by the pleadings as shown above. The only other issue necessary to have been determined was issue No. 14, presenting the question of plaintiff's contributory negligence. If the jury had found in addition to its findings on issues Nos. 3, 4, and 13 that plaintiff was not guilty of contributory negligence, he would have been entitled to judgment. If it had found that he was guilty of contributory negligence, he would not have been entitled to judgment.

[2] The failure to agree on issue No. 14 had the effect of a mistrial, and the court should have dismissed the jury and set the cause for another trial.

[3] Instead of doing so, the trial court rendered judgment for defendant on the findings, and the Court of Civil Appeals finds that the servants whose negligence caused the injuries were plaintiff's servants, contrary to the findings of the jury that the failure of the employés of the defendant to clean the gas out of said generator was negligence as that term had been defined in the court's charge, and affirmed the judgment of the trial court. Such action was an invasion of the province of the jury.

We recommend that the judgments of the trial court and the Court of Civil Appeals be reversed, and that the cause be remanded for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.